**BROTHERHOOD OF RAILWAY, AIR-LINE AND STEAMSHIP CLERKS, Freight Handlers, Express and Station Employees, John W. Banks, William T. Bandy, Jr., Harvey B. Edwards, Anthony J. Galate, Denver O. Nell, R. Duane Rogers, Appellants,**

v.

**KANSAS CITY TERMINAL RAILWAY COMPANY, Appellee.**

No. 78–1082.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 13, 1978.

Decided Nov. 20, 1978.

---

James L. Highsaw of Highsaw, Mahoney & Friedman, Washington, D. C., for appellants; John O'B. Clarke, Jr., Washington, D. C., Glenn McCann, Kansas City, Mo., and William J. Donlon, Gen. Counsel, Broth. of Ry. and Airline Clerks, Rosemont, Ill., on the brief.

William M. Stapleton of Lathrop, Koontz, Righter, Clagett, Parker & Norquist, Kansas City, Mo., for appellee; William M. Stapleton, Sam D. Parker and Stuart W. Conrad, Kansas City, Mo., on the brief.

Before ROSS and HENLEY, Circuit Judges, and MARKEY,* Chief Judge.

ROSS, Circuit Judge.

The issue raised in this case requires the court to consider whether a special board of adjustment, convened pursuant to 45 U.S.C.

§ 153, Second of the Railway Labor Act, has rendered a decision which fails to confine itself to matters within the scope of the Board's jurisdiction.

As set out in the opinion of the district court, the plaintiff-appellant, Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees [hereinafter BRAC], "is an unincorporated labor organization which is the duly authorized representative pursuant to the provisions of the Railway Labor Act * * * of the craft or class of clerical and related employees, as well as Towermen and Telegraphers of the defendant terminal company." The defendant-appellee, Kansas City Terminal Railway Company [hereinafter Terminal Co.], "is a 'carrier' within the meaning of the Railway Labor Act."

BRAC and Terminal Co. are parties to a collective bargaining agreement executed in 1965 known as the "Stabilization Agreement." The agreement establishes a classification of "protected employees" who "will be retained in service subject to compensation as hereinafter provided unless or until retired, discharged for cause, or otherwise removed by natural attrition."

The jobs of over two hundred employees in the Terminal Company's Mail and Baggage Department were eliminated by the company in 1975, and the employees who had held those jobs were then reduced to furlough status. This occurred because the Terminal Co. lost its contract to serve the U. S. Postal Service, and the company consequently closed its Mail and Baggage Department.

BRAC challenged the Terminal Company's decision as violative of the Stabilization Agreement, contending that the furloughed employees were "protected employees" who must be retained in compensated service.

After exhausting the Terminal Co.'s grievance procedures, BRAC requested the submission of the dispute to a special board of adjustment, as provided for under the

---

* The Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation.

terms of the Stabilization Agreement and the Railway Labor Act. *See* 45 U.S.C. § 153, Second. BRAC submitted three issues to Special Board of Adjustment No. 605 for its resolution:

(1) Does the February 7, 1965 Agreement apply to the employes of the Baggage and Mail Department of the Kansas City Terminal Railway Company?

(2) Does the loss of a mail contract, between the U. S. Postal Service and the Kansas City Terminal Railway Company, nullify the provisions of the February 7, 1965 Agreement?

(3) Are the employes of the Kansas City Terminal Company who were employed in the Baggage & Mail Department and who qualified as protected employes under the provisions of the February 7, 1965 Agreement, entitled to continue receiving the benefits flowing from that Agreement until such time as they are deprived of those benefits under the express terms of such Agreement?

The Board's neutral member issued an opinion answering these three questions in a decision which was favorable to the Terminal Co.: the Board concluded that the Baggage and Mail Department employees were *not* entitled to the protective benefits of the Stabilization Agreement.

BRAC then brought the instant action for review by the district court, pursuant to 45 U.S.C. § 153, Second, requesting the court to declare the order of the Board invalid. However, the district court found no basis on which to set the Board order aside, and BRAC appealed to this court. We affirm.

As the district court did, we begin by setting out the standard of review which is circumscribed by statute.

The Railway Labor Act provides specifically for district court review of orders of the National Railway Adjustment Board (NRAB), a 34-member body created by the legislative act for dispute resolution. 45 U.S.C. § 153 First, (p) and (q) permit judicial review of NRAB orders to the following extent:

The court shall have jurisdiction to affirm the order of the division or to set it aside, in whole or in part, or it may remand the proceeding to the division for such further action as it may direct. On such review, the findings and order of the division shall be conclusive on the parties, except that the order of the division may be set aside, in whole or in part, or remanded to the division, [1] for failure of the division to comply with the requirements of this chapter, [2] for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or [3] for fraud or corruption by a member of the division making the order. The judgment of the court shall be subject to review as provided in sections 1291 and 1254 of Title 28.[1]

45 U.S.C. § 153, First (q).

Although a decision of a special board of adjustment, *not* the NRAB, is under review in this case, the district court concluded, and the parties agree, that the same statutory standards are applicable.

■ Special boards of adjustment are created under the authority of 45 U.S.C. § 153, Second,[2] and the last sentence of that section states: *"Compliance with such awards shall be enforcible* by proceedings in the United States district courts in the same manner and subject to the same provisions that apply to proceedings for enforcement of compliance with awards of the

---

1. Subsection (p) of the Act provides:

 The district courts are empowered, under the rules of the court governing actions at law, to make such order and enter such judgment, by writ of mandamus or otherwise, as may be appropriate to enforce or set aside the order of the division of the Adjustment Board: *Provided, however,* That such order may not be set aside except for failure of the division to comply with the requirements of

 this chapter, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order.

2. That section allows the carrier and a representative of the employees to establish tribunals to resolve disputes otherwise referable to the NRAB.

Adjustment Board." (Emphasis added.) We conclude that courts may consider an application to *set aside* special board orders on the same bases as well, and have inferentially approved this holding before. *See Transportation-Communication Division v. St. Louis-San Francisco Railway Co.,* 419 F.2d 933, 935 (8th Cir.), *cert. denied,* 400 U.S. 818, 91 S.Ct. 34, 27 L.Ed.2d 45 (1970). *Accord, Barrett v. Manufacturers Railway Co.,* 326 F.Supp. 639, 643–44 (E.D.Mo.1971); *Kansas City Southern Railway Co. v. Brotherhood of Railroad Trainmen,* 305 F.Supp. 1142, 1147 (W.D.Mo.1969); *Transportation-Communication Employees Union v. St. Louis-San Francisco Railway Co.,* 296 F.Supp. 507, 508–09 (E.D.Mo.1968).

The parties agree that neither failure to comply with the requirements of the chapter, nor fraud and corruption by a member of the board, is at issue. The sole basis for the requested relief is that the order given did not confine itself to matters within the scope of the Board's jurisdiction.

The parties and the district court all rely on two court of appeals cases from the Fifth Circuit, *Brotherhood of Railroad Trainmen v. Central of Georgia Railway Co.,* 415 F.2d 403 (5th Cir. 1969), *cert. denied,* 396 U.S. 1008, 90 S.Ct. 564, 24 L.Ed.2d 500 (1970), and *Diamond v. Terminal Railway Alabama State Docks,* 421 F.2d 228 (5th Cir. 1970), but emphasize different language in those opinions.

■ We conclude that the *holdings* of those opinions require enforcement of board orders as not beyond the scope of the Board's jurisdiction unless the award is "without foundation in reason or fact," *Brotherhood of Railroad Trainmen v. Central of Georgia Railway Co., supra,* 415 F.2d at 414; making that determination requires that a court refer to the language and purpose of the collective bargaining agreement:

[W]e are concerned with whether the Board's award exceeded its jurisdiction. This Court recently had occasion to consider when an award made "final and binding" by the Railway Labor Act is not final and binding, but may be set aside by a court because the Board did not have authority to make it. That case, *Brotherhood of Railroad Trainmen v. Central of Ga. Ry. Co.,* 5 Cir., 1969, 415 F.2d 403, is controlling here. We there stated:

"* * * In the arbitration context, an award 'without foundation in reason or fact' is equated with an award that exceeds the authority or jurisdiction on the arbitrating body. To merit judicial enforcement, an award must have a basis that is at least rationally inferable, if not obviously drawn, from the letter or purpose of the collective bargaining agreement. The arbitrator's role is to carry out the aims of the agreement, and his role defines the scope of his authority. When he is no longer carrying out the agreement or when his position cannot be considered in any way rational, he has exceeded his jurisdiction. * * *"

*Brotherhood of Railroad Trainmen v. Central of Ga. Ry. Co.,* 5 Cir. 1969, 415 F.2d 403, 411–412. An Adjustment Board order is not "conclusive," we then determined, when it is "so unfounded in reason and fact, so unconnected with the wording and purpose of the collective bargaining agreement as to 'manifest an infidelity to the obligation of the arbitrator.'" *Id.* at 415, citing *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). See also *Gunther v. San Diego & Arizona Eastern Ry. Co.,* 382 U.S. 257, 261, 86 S.Ct. 368, 371, 15 L.Ed.2d 308 (1965); *Safeway Stores v. American Bakery & Con. W. I. U., Local 111,* 5 Cir., 1968, 390 F.2d 79.

Under the circumstances of this case, therefore, the District Court was required to enforce the Adjustment Board's award unless that award is "without foundation in reason or fact." *This test of the Board's jurisdiction is not whether the reviewing court agrees with the Board's interpretation of the bargaining contract, but whether the remedy fashioned by the Board is rationally explainable as a logi-*

cal means of furthering the aims of that contract.

*Diamond v. Terminal Railway Alabama State Docks, supra,* 421 F.2d at 233 (emphasis added).[3]

In a more cryptic but similar statement this court has concluded: "[O]ur function is limited solely to determining whether the arbitration decision draws its essence from the collective bargaining agreement * *." *General Committee of Adjustment v. Burlington Northern, Inc.,* 563 F.2d 1279, 1282 n.1 (8th Cir. 1977).

The decision by Special Board No. 605 made the following holdings in connection with its award favoring the Terminal Co.: (1) the Stabilization Agreement protected employees in the event of a decline in business, but did not address the problem of a complete cessation of a part of the company's business; (2) the Mail and Baggage Department employees were on a separate seniority roster and could not exercise their seniority to work in other departments of the company; (this fact was apparently gleaned from an affidavit submitted by the Terminal Co.; the decision fails to cite the source of this conclusion); (3) the work in the Mail and Baggage Department had ceased to exist, with no reasonable likelihood the employees would be recalled to service in that department.

The Board writes:

A thorough review of the record at hand compels this Board to conclude that the February 7, 1965 Stabilization Agreement was intended to provide protection to employees in the event of a decline in the Carrier's business. Said Agreement was not intended, in our opinion, to accord protection to employees when the work previously performed by them disappears entirely. The February 7, 1965 Agreement simply did not address the question of what was to happen when there was a complete cessation of the Company's business. And merely because the Terminal Company was still engaged in activities separate and apart from mail handling, this nonetheless does not alter the fact that the mail handling work previously performed by the Claimants was completely abolished when the United States Postal Service vitiated their contract with the Terminal Company. * * * The Claimants who were furloughed on June 23 or June 30, 1975 held seniority in the Mail and Baggage Department, and were at this time unable to exercise their seniority to positions in any of the other facilities maintained by the Terminal Company. In the light of this, this Board must find that the Terminal Company was not required to accord them the protective benefits required by the February 7, 1965 Agreement. Their work simply ceased to exist and there was no reasonable likelihood that they would ever be recalled to mail and baggage service as contemplated by Section 3 of Article I of the February 7, 1965 Agreement.

BRAC argued to this court that the district court opinion makes no findings with respect to whether the award has any basis in the language of the Stabilization Agreement, in the conduct of the parties under the Agreement, or in any uniform custom and practice concurred in by the parties, and that an examination of these factors does not sustain the district court's decision to approve the award.

Specifically, with respect to the document, BRAC contends that it establishes a protective agreement between the union and the entire carrier operation, not just a department thereof; that work force reductions under Article I, Section 3 [4] are permit-

---

**3.** The appellant BRAC relies on language from the Fifth Circuit's *Central of Georgia* case, *supra,* 415 F.2d 403, which approved the district court's statement that an arbiter's construction and interpretation of a contract "must find some basis in the language of the written agreement, or in the conduct of parties under that language, or in some uniform custom and practice concurred in by the parties." *Id.* at 414. It is apparent that the appeals court considered this a restatement of its "without foundation in reason or fact" standard. *Id.*

**4.** Article I, Section 3 provides in pertinent part:
In the event of a decline in a carrier's business in excess of 5% in the average per-

ted based on a carrier's decline in business as a whole, and do not concern a decline in a particular department; that Article II, Section 2 requires a "protected employee" to accept employment in his craft offered to him by the carrier in any seniority district or on any seniority roster throughout the railroad system; and that Article III, Section 1 allows the carriers "to make technological, operational and organizational changes" and thereby to "transfer work and/or transfer employees" throughout the carrier's system within the craft or class in which the employee works. The gist of BRAC's argument with respect to the latter two points is that both tend to show that the Agreement was written to affect the carrier's operations as a whole, not a particular department, and that protected employees could be retained in service by being transferred.

BRAC also argues that the award has no basis in the conduct of the parties under the Agreement,[5] or in any uniform custom and practice concurred in by the parties.

 This court must review the decision as rendered for its rationality; it is not to embark on its own reading of the Agreement or, to substitute an improved interpretation of the contract. We do not think it can be said that the decision of the Board is not rationally inferable from the language and purpose of the contract. We understand the Board's reasoning to be as follows.

The Mediation Agreement set out the rights of protected employees and the circumstances under which they would be protected. One such circumstance was an overall *decline* in the carrier's business. In that situation protected employees were provided job security to a certain extent, and, beyond that point, the employer was allowed to make reductions in his work force. Restoration of the carrier's business then required furloughed employees to be recalled.

However, the problem of a complete *cessation* of a portion of the carrier's business had not been addressed, and, according to the Board, "[s]aid Agreement was not intended, in our opinion, to accord protection to employees when the work previously performed by them disappears completely." Unlike a decline in business, "there was no reasonable likelihood that [employees] would ever be recalled to mail and baggage service as contemplated by [those sections of the Agreement which protected employees in the event of a decline]."

Moreover, due to the fact as found by the Board that Mail and Baggage Department employees could not exercise seniority to take positions elsewhere in other departments, those employees could not be transferred to new work. This is the key to the Board's decision, for implicit in it is the view that protective benefits for employees under the Agreement required that the em-

---

centage of both gross operating revenue and net revenue ton miles in any 30-day period compared with the average of the same period for the years 1963 and 1964, a reduction in forces in the crafts represented by each of the organizations signatory hereto may be made at any time during the said 30-day period below the number of employees entitled to preservation of employment under this Agreement to the extent of one percent for each one percent the said decline exceeds 5%.

Pursuant to a "Memorandum of Agreement" between BRAC and Terminal Co. substitute criteria were developed to measure a decline in business replacing "Revenue Ton Miles" and "Gross Operating Revenue" because it was agreed that those criteria were inapplicable to this particular railway company.

5. Here BRAC argues that no other carriers had attempted to argue that the loss of mail handling had the effect of not protecting mail department employees; that a decline in "lineal feet of mail handled" was *one* of the factors for measuring *decline* of business and reduction of forces; that a 1968 agreement between the parties excluded employees in the mail department hired after October 1962 from inclusion under the Stabilization Agreement, thus implying that earlier-hired employees were entitled to protective benefits. BRAC in this regard points to a paragraph in a 1969 agreement which allows the Terminal Co. to furlough 115 junior employees *without* job protection if the nonrail mail contract with the Post Office is cancelled. The 1969 Agreement also provided that it would "not establish a precedent or prejudice the position of either party under the present Job Stabilization Agreement * * *.

ployer have an effective claim to employee services either now (via transfer) or in the future (via recall). In our opinion the Board felt it would be an anomalous reading of the Agreement to *allow* an employer to reduce work forces when business declined, but require him to retain employees he could not foreseeably use at all.

We have carefully examined the Agreement's language relied upon by BRAC, as well as the custom and conduct cited in support of its interpretation, and we are not persuaded that any of BRAC's arguments rob the Board's decision of its rationality.[6]

Accordingly, the judgment of the district court is affirmed.

---

**6.** According to BRAC, the Board's conclusion that the Mail and Baggage Department employees could not be transferred is incorrect. We do not think the portions of the Agreement cited by BRAC permit us to set aside the Board's finding on this point.