593 F.2d 314
 100 L.R.R.M. (BNA) 2845, 85 Lab.Cas. P 11,136
 KEWANEE MACHINERY DIVISION, CHROMALLOY AMERICAN CORPORATION, Appellee,
v.
LOCAL UNION NO. 21, INTERNATIONAL BROTHERHOOD OF TEAMSTERS,
CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Appellant.
 No. 78-1437.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 17, 1978.
Decided Feb. 21, 1979.
 
 Barbeau A. Roy, Wiley, Craig, Armbruster, Wilburn & Mills, St. Louis, Mo., for appellant.
 Lawrence W. Meyer (argued), and Angelo M. Pezzani, St. Louis, Mo., on brief, for appellee.
 Before LAY and HEANEY, Circuit Judges, and HANSON,* Senior District Judge.
 HEANEY, Circuit Judge.
 
 
 1
 Local No. 21 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America appeals from the grant of a motion for summary judgment in favor of Kewanee Machinery Division, Chromalloy American Corporation, vacating an arbitration award. We find that the arbitrator's award drew its essence from the collective bargaining agreement and that the District Court erred in setting the award aside.
 
 
 2
 The material facts are undisputed. Kewanee operates a manufacturing facility in Missouri. Local 21 represents the production and maintenance employees of Kewanee. Kewanee and Local 21 were parties to a collective bargaining agreement in effect throughout 1976.
 
 
 3
 In May, 1976, Kewanee terminated an employee, John Goesling, on the ground that he had exceeded the two absences per month standard established by company policy.[1] Goesling filed a grievance claiming he was discharged while sick and under a doctor's care. He requested reinstatement and back pay without loss of seniority. The grievance was processed without resolution and eventually submitted to arbitration.
 
 
 4
 The arbitrator had before him the collective bargaining agreement in force at the time of the discharge which contained the following provisions:
 
 Article IV Management
 
 5
 Section 2 The Company retains the exclusive and unrestricted right to manage its business and its working forces, including but not limited to, the sole right to * * * discharge employees * * *.Section 3 It is further agreed that any other management rights not otherwise limited by this contract are hereby reserved to the Company.
 
 Article XI Grievance Procedure
 
 6
 Section 7 It is agreed the arbitrator must render a decision within the scope and terms of this agreement and only on interpretation and application of the provisions herein. It is agreed the arbitrator shall not add to or subtract from, alter or modify any provisions of this agreement. Further, the arbitrator may not limit or restrict management rights not limited or waived by specific sections of this agreement. It is understood and agreed the arbitrator's decision will be binding on the Company, the Union, and the employee(s).
 
 Article XII Seniority
 
 7
 Section 3 Seniority shall be broken and all employment relations terminated when an employee:
 
 
 8
 (b) is discharged for proper cause.
 
 
 9
 In addition, the arbitrator had before him Kewanee's unilaterally established absenteeism policy which provided:
 
 
 10
 (1) Any tardiness or unexcused absence in excess of two each per month is grounds for disciplinary action.
 
 
 11
 (2) Any employee that averages being tardy more than twice or absent more than twice per month over a six month period will be subject to dismissal.
 
 
 12
 (3) Repetitious absence will no longer be tolerated no matter what the excuse.
 
 
 13
 The arbitrator sustained the grievance and directed that the employee be reinstated with back pay and all other contractual benefits. He stated in his opinion:
 
 
 14
 If the just cause standard is to have any real meaning in contract administration, Management cannot abdicate its responsibility to undertake the onerous task of distinguishing between wrongful conduct meriting discipline and unfortunate circumstances, which despite production exigencies, demand a limited forebearance.
 
 
 15
 The grievance is granted and the employer is directed to pay to Grievant all of the wages and other contractual benefits he was improperly deprived of through Management's decision to sever his employment. In computing the amount due to him, the Company shall be entitled to deduct any wages or compensation Grievant received from alternate sources. He shall also be offered reinstatement to his former position.
 
 
 16
 Kewanee then brought this action under § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, to have the arbitrator's award vacated. The District Court granted Kewanee's motion for summary judgment on the grounds that the arbitrator exceeded his authority by modifying and amending the agreement.
 
 
 17
 The principal question before us is whether the arbitrator's award drew its essence from the collective bargaining agreement. If it did, the District Court must be reversed. United Steelwkrs. of Am. v. Enterprise Wheel & Car Corp.,[2] 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); Western Iowa Pork Co. v. National Bro. Pack. & Dairy Wkrs., 366 F.2d 275 (8th Cir. 1966).
 
 
 18
 To effectuate the strong federal policy favoring arbitration as a means of resolving labor disputes, our review of the arbitrator's award is limited. United Steelwkrs. of Am. v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelwkrs. of Am. v. Warrior & Gulf N. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelwkrs. of Am. v. Enterprise Wheel & Car Corp., supra. See also Resilient Floor v. Welco Mfg. Co., Inc., 542 F.2d 1029 (8th Cir. 1976); General Drivers v. Sears, Roebuck & Co., 535 F.2d 1072 (8th Cir. 1976). It is not within the scope of our review to pass upon the merits of a grievance. See General Drivers & H. U., L. 554 v. Young & Hay Transp. Co., 522 F.2d 562 (8th Cir. 1975). The grant of power by the agreement must be broadly construed, with any doubt resolved in favor of the arbitrator's authority. Resilient Floor Etc. v. Welco Mfg. Co. Inc., supra at 1032; Western Iowa Pork Co. v. National Bro. Pack. & Dairy Wkrs., supra at 277.
 
 
 19
 Here, the arbitrator was presented with the collective bargaining agreement and the facts surrounding the discharge of Goesling. Article IV, § 2, of the agreement provides:
 
 
 20
 The Company retains the exclusive and unrestricted right to manage its business and its working forces including * * * the sole right to * * * discharge employees * * *.
 
 Article XII, § 3, however, states:
 
 21
 Seniority shall be broken and all employment relations terminated when an employee * * * is discharged For proper cause. (Emphasis added.)
 
 
 22
 We observe that while there is an inherent tension between these two provisions, it was the arbitrator's obligation to resolve any conflicts in construction.[3]
 
 
 23
 Kewanee contends that the arbitrator exceeded his authority since the award effectively limits its right to discharge for absenteeism only to cases involving misconduct.[4] It argues that its rights under Article IV were limited contrary to the provisions in Article XI, § 7. This Court has characterized a similar provision[5] as
 
 
 24
 broad and general in its application and does little more than repeat the law found in the Enterprise case, supra (363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424), to the effect that an arbitrator is "confined to interpretation and application of the collective bargaining agreement."
 
 
 25
 Western Iowa Pork Co. v. National Bro. Pack. & Dairy Wkrs., supra at 278.
 
 
 26
 The Supreme Court stated in United Steelwkrs. of Am. v. Warrior & Gulf N. Co., supra, 363 U.S. at 584, 80 S.Ct. at 1354, that the term "strictly a function of management" must be "interpreted as referring only to that over which the contract gives management complete control and unfettered discretion." On its face, the agreement before us contains two clauses governing the discharge of employees, one of which provides that discharges be only upon proper cause. Thus, an arbitrator could hold that Kewanee does not retain complete control over discharges. In so holding, the arbitrator's award took its absence from the collective bargaining agreement.[6]
 
 
 27
 Kewanee also contends that Shop Rule No. 3 renders the discharge of Goesling proper by definition, and that the arbitrator's decision, in effect, amends or modifies the terms of the rule. Shop Rule No. 3, which was unilaterally adopted by Kewanee, provides: "Employees must notify Shop Office if tardiness is to exceed fifteen (15) minutes. Notification must be given prior to anticipated absences of not later than thirty (30) minutes after the start of a shift. Excessive tardiness or frequent or repetitive absence from work are cause for dismissal." Kewanee claims the effect of the arbitrator's decision limits the application of Rule No. 3 to only cases where employees are absent without just cause.
 
 
 28
 The award of an arbitrator finding a discharge improper has been upheld where there is "tension" between a shop rule and a term of the contract. Campo Machining Co. v. Local Lodge No. 1926, Etc., 536 F.2d 330 (10th Cir. 1976). There, the contract provided that discharges be only on "good and sufficient cause," while the shop rule stated that a single incident of leaving the plant during a shift without permission would be punished by discharge. The court held that the arbitrator in not finding sufficient cause for the discharge was resolving the "tension" between the shop rule and the discharge clause of the contract; and in doing so, was engaged in construction and interpretation of the collective bargaining agreement. Id. At 333. Similarly, an arbitrator's award that a discharge was without proper cause was upheld although the employee technically violated a company rule by striking an inspector. Timken Company v. United Steelworkers of America, 492 F.2d 1178 (6th Cir. 1974).
 
 
 29
 The arbitrator could take into account the "tension" between the application of Shop Rule No. 3 and the provision of the agreement that discharges be with proper cause. It is a question of interpretation and construction under the facts what relationship exists between the two provisions. We cannot interfere with the arbitrator's award "unless it can be said with positive assurance that the contract is not susceptible of the arbitrator's interpretation." Intern. Broth. of Elect. Wkrs. v. Prof. Hole, 574 F.2d 497, 503 (10th Cir. 1978). See also Ludwig Honold Mfg. Co. v. Fletcher, 405 F.2d 1123 (3d Cir. 1969). This cannot be said here.
 
 
 30
 The judgment of the District Court is reversed.
 
 
 
 *
 WILLIAM C. HANSON, United States Senior District Judge for the Southern District of Iowa, sitting by designation
 
 
 [1]
 Kewanee claimed that it had a right to discharge Goesling even if the absence, which precipitated his discharge, was caused by a bona fide illness
 
 
 [2]
 On the other hand,
 (The arbitrator) does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.
 United Steelwkrs. of Am. v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960).
 
 
 [3]
 Although our interpretation of the agreement in light of the facts surrounding the discharge may differ, such disagreement has no bearing in our review. Our role is not to review the merits. United Steelwkrs. v. American Mfg. Co., 363 U.S. 564, 568, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); Western Iowa Pork Co. v. National Bro. Pack. & Dairy Wkrs., 366 F.2d 275 (8th Cir. 1966)
 
 
 [4]
 The arbitrator's opinion states:
 Failure to distinguish between legitimate excuses for absence and reprehensible misconduct is repugnant to fundamental notions of fair play whenever it results in an employee whose absence is for legitimate reason beyond his control being treated as harshly as a deliberate wrongdoer.
 The District Court found:
 (T)he arbitrator focused not on the "cause" for the Termination (absenteeism) which was a proper cause for discharge, but on the alleged cause for Goesling's last Absence, thereby altering the contract and limiting the Company's right to discharge employees only as a disciplinary measure for "misconduct."
 Kewanee Mach. Div. v. Local Union No. 21, 450 F.Supp. 1074, 1078 (E.D.Mo.1978).
 
 
 [5]
 (A) The arbitrator shall have no power to add to, subtract from, change or modify any provision of this Agreement but he is authorized only to interpret the specific provisions of this Agreement and to apply them to the specific facts of a grievance which is subject to arbitration
 Western Iowa Pork Co. v. National Bro. Pack. & Dairy Wkrs., supra at 278.
 
 
 [6]
 Kewanee also contends, as the District Court found, that the arbitrator was basing the decision on his own subjective feelings, as evidenced by the use of "patently unfair," and "repugnant to fundamental notions of fair play." Local 21 claims these are objective evaluations of proper cause as applied to Goesling's discharge. We need not decide which characterization of these phrases is correct. In our review, "(a) mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award." United Steelwkrs. of Am. v. Enterprise Wheel & Car Corp., supra 363 U.S. at 598, 80 S.Ct. at 1361