# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1354

_____

| | | |
|---|---|---|
| Bureau of Engraving, Inc., | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Graphic Communications International | * | |
| Union, Local 1B, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: November 19, 1998
Filed: January 6, 1999

_____

Before BEAM, MAGILL, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

MAGILL, Circuit Judge.

The Bureau of Engraving, Inc. appeals from the district court's denial of its motion to vacate two labor arbitration awards that provided two employees monetary damages for missed overtime opportunities. The Bureau contends that these awards failed to draw their essence from the collective bargaining agreement. We agree and, thus, reverse.

# I.

The Bureau of Engraving, Inc. (Bureau) and the Graphic Communications International Union, Local 1B (Union) have been parties to several collective bargaining agreements that have regulated the distribution of overtime opportunities to Bureau employees. Between April 1988 and March 1995, the applicable agreements mandated that overtime opportunities be allocated under a system of equalization. Under this system, if the Bureau improperly overlooked an employee for overtime, it would simply offer him or her the next available overtime opportunity--the so called "make-up" remedy.

When the parties negotiated their current collective bargaining agreement (CBA),[1] they agreed to eliminate the equalization system of overtime distribution because it caused too many complaints. In its place, the parties agreed to a straight rotation system of overtime distribution. Under this system, the first eligible employee on an overtime list receives the next available overtime opportunity. If that employee declines the opportunity or is not available, the Bureau offers the overtime to the next employee on the list.

Although the CBA modifies the method for allocating overtime, it does not set forth any specific remedy for failure to follow that allocation scheme. While negotiating the current CBA, the Union proposed a monetary remedy for breach of the overtime provisions. The Bureau, however, rejected this remedy. See Plocker Arb. Award at 3, reprinted in J.A. at 109. No other remedy, apparently, was proposed, and the CBA contains no provision governing remedies for breach of the overtime provisions.

In 1995 and 1996, the Bureau breached the CBA by skipping two employees

---

[1]The current CBA is effective from April 1, 1995 through March 31, 2000.

when it was their turn in the overtime rotation.[2]  Both employees filed grievances seeking monetary awards for the Bureau's breaches.  The Union sought arbitration of both disputes before separate arbitrators.[3]  In both arbitrations, the Union argued that the arbitrators should impose a monetary remedy for breach of the overtime provisions because the Bureau's prior practice of offering a make-up opportunity was inconsistent with the new straight rotation system.  The Union argued that the make-up remedy might not make the employees whole because the next opportunity might not be for the same number of hours or pay, the next opportunity might not arise for a long period of time, the employee might be "up" in the rotation when the make-up opportunity arises, and the employee might not be able to work during the make-up opportunity. In contrast, the Bureau argued that the CBA did not allow for a monetary remedy and, in any event, that the make-up remedy was consistent with the parties' past practices and did not disrupt the straight rotation system.  Both arbitrators independently concluded that a make-up remedy was not appropriate and ordered the Bureau to remedy its breaches with monetary damages.[4]

The Bureau filed a motion to vacate the awards in the district court, arguing that they failed to draw their essence from the CBA.  The Union filed a cross-motion to

---

[2]In this appeal, the Bureau does not dispute the finding that it breached the CBA.

[3]The arbitration provision of the CBA provides:

> All disputes and grievances arising over the interpretation of, or adherence to, the terms and provisions of the Collective Bargaining Agreement, including any questions of the arbitrability of any dispute or grievance, shall be subject to resolution by the procedure set forth in the Grievance and Arbitration language of Section 3.

Collective Bargaining Agreement § 3(a), at 2, reprinted in J.A. at 12.

[4]The arbitrators awarded the grievants compensation for a total of 12.5 hours of missed overtime at the Sunday double-time rate.

confirm the awards. The district court granted summary judgment to the Union and entered judgment confirming the awards. The Bureau appeals from this judgment.

## II.

The Bureau argues that we must reverse the district court's judgment enforcing the arbitrators' awards because they failed to draw their essence from the parties' CBA. We agree.

"The district court's denial of a motion to vacate an arbitration award is not entitled to any special deference on appeal, and this Court reviews its conclusions of law de novo." Homestake Mining Co. v. United Steelworkers, Local 7044, 153 F.3d 678, 680 (8th Cir. 1998). In contrast, our review of an arbitrator's award is deferential. "As long as the arbitrator's award 'draws its essence from the collective bargaining agreement,' and is not merely 'his own brand of industrial justice,' the award is legitimate." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 36 (1987) (quoting United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960)). Although we may not vacate an award if the arbitrator was arguably construing or applying the CBA, see Misco, 484 U.S. at 38, we may reverse an award that either fails to draw its essence from the CBA or is contrary to the plain language of the agreement. See Keebler Co. v. Milk Drivers & Dairy Employees Union, Local No. 471, 80 F.3d 284, 287 (8th Cir. 1996) (citing Iowa Mold Tooling Co. v. Teamsters Local Union No. 828, 16 F.3d 311, 312 (8th Cir. 1994)).

We believe that the awards failed to draw their essence from the CBA. The essence of the CBA is derived not only from its express provisions, but also from the industrial common law. See United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 581-82 (1960). The industrial common law includes the past practices of the industry and the shop, see id., as well as the parties' negotiating history and other extrinsic evidence of their intent. See International Woodworkers v. Weyerhaeuser

-4-

Co., 7 F.3d 133, 136-37 (8th Cir. 1993); Fairview Southdale Hosp. v. Minnesota Nurses Ass'n, 943 F.2d 809, 811-12 (8th Cir. 1991).

It is undisputed that the CBA is silent regarding remedies for breach of the overtime provisions. If an arbitrator attempts to interpret a written agreement that is silent or ambiguous without considering the parties' intent, his award will fail to draw its essence from the CBA. See Weyerhaeuser, 7 F.3d at 136-37; see also CSX Transp., Inc. v. United Transp. Union, 29 F.3d 931, 936 (4th Cir. 1994) ("In construing any contract, including a collective bargaining agreement, determining the intent of the parties is the essential inquiry"; if the written agreement is silent, the arbitrator may consider past practices and bargaining history to fill gaps). Accordingly, we must "consider whether it is at all plausible to suppose that the remedy [the arbitrators] devised was within the contemplation of the parties and hence implicitly authorized by the agreement." Independent Employees' Union of Hillshire Farm Co. v. Hillshire Farm Co., 826 F.2d 530, 533 (7th Cir. 1987) (quotations omitted).

Here, the industrial common law and evidence of the parties' intent militates our conclusion that the awards failed to draw their essence from the CBA. Prior to April 1, 1995, the Bureau offered a make-up remedy when it breached the overtime provisions. Thus, a monetary award cannot find support in the parties' past practices. More importantly, the parties' collective bargaining history clearly shows that a monetary remedy was contemplated and excluded from the CBA. The Bureau presented uncontroverted evidence that the Union proposed a monetary remedy for breach of the overtime provisions and that the Bureau explicitly rejected that proposal. Because this evidence shows that the Bureau did not anticipate a monetary award for breach of the overtime provisions, we conclude that the awards were not within the contemplation of the parties and, therefore, not implicitly authorized by the CBA. See Phoenix Newspapers, Inc. v. Phoenix Mailers Union Local 752, 989 F.2d 1077, 1082 (9th Cir. 1993) (vacating arbitrator's award when employer rejected same remedy in prior collective bargaining agreement negotiations). In sum, the arbitrators' awards

failed to draw their essence from the CBA because (1) the CBA was silent regarding remedies, (2) the awards were inconsistent with the parties' past practices, and (3) the awards directly contravene the Bureau's clear intent not to be bound by a monetary remedy during CBA negotiations. The awards here were not derived from an interpretation of the CBA. Rather, the arbitrators were dispensing their own brand of industrial justice. See Enterprise Wheel, 363 U.S. at 597 ("The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency. Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice.").

The Union cites Daniel Constr. Co. v. International Union of Operating Engineers, Local 513, 738 F.2d 296, 300 (8th Cir. 1984), for the proposition that an arbitrator may craft an award not specifically provided for in a collective bargaining agreement. While this may be true, the arbitrators here have crafted a remedy specifically excluded from the CBA and in direct contravention with the parties' past practices and intent. We, therefore, conclude that Daniel does not require a different result in this case.

## III.

We conclude that the arbitrators' awards failed to draw their essence from the CBA. The CBA was silent regarding the appropriate remedy for breach of the overtime provisions, but the arbitrators' imposed awards that were inconsistent with the parties' past practices and their intent as evidenced by their CBA negotiations. Accordingly, we reverse the district court's order and remand with instructions to vacate the awards.

-6-

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.