# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-1653

_____

Michael Sullivan

*Petitioner - Appellant*

v.

Endeavor Air, Inc., formerly known as Pinnacle Airlines, Inc., formerly known as Express Airlines, Inc., formerly known as NWA Airlink

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: March 8, 2017
Filed: May 8, 2017

_____

Before BENTON, BEAM, and MURPHY, Circuit Judges.

_____

BENTON, Circuit Judge.

Michael Sullivan appeals the district court's[1] denial of his Amended Petition to Vacate Arbitration Award. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

## I.

The petition seeks to vacate an arbitration award issued by a System Board of Adjustment pursuant to the Railway Labor Act, 45 U.S.C. § 151, *et seq*. The RLA states: "If any employee . . . is aggrieved by any of the terms of an award . . . then such employee . . . may file in any United States district court . . . a petition for review . . . . On such review, the findings and order [of the Board] shall be conclusive on the parties . . . ." **45 U.S.C. § 153(q)**. *See United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 37-38 (1987) ("Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept. Courts thus do not sit to hear claims of factual or legal error by an arbitrator . . . . To resolve disputes about the application of a collective-bargaining agreement, an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them."); *Hunt v. Northwest Air., Inc.*, 600 F.2d 176, 179 (8th Cir.) (decisions of airline boards under section 184 have the same legal characteristics and effect as those of the railroad board under section 153), *cert. denied*, 444 U.S. 946 (1979). Although Sullivan disputes some of the facts set forth in the award, they are "conclusive," and are the basis for the following facts.

Sullivan was a pilot for a predecessor to Endeavor Air, Inc. from 2001 until his termination in December 2006. Endeavor's pilots are represented by the Air Line

---

[1]The Honorable Susan R. Nelson, United States District Judge for the District of Minnesota.

Pilots Association, International. The ALPA and Endeavor have a collective bargaining agreement (CBA).

Before 2006, Sullivan received "nondisciplinary counselings about such things as being late for a flight, trying to change out times to avoid a recorded late departure, and appearance." He was never disciplined formally. On October 17, 2006, Endeavor issued him two "Written Letters of Warning," for missing a flight and failing to keep certifications current. He did not grieve either warning; pursuant to the CBA, they became binding. Two weeks later, Endeavor disciplined him for violating company dress code and arriving late to a flight. It scheduled a meeting to discuss these violations. He missed the meeting, but the parties met the next day.

On November 29, Endeavor gave Sullivan a "Final Written Letter of Warning" about his "overall duty performance," including:

> duty performance, poor decision-making causing delayed flights, late arrival to the aircraft for showtime, inappropriate use of the ACARS system, failure to remain contactable, failure to report for meetings with company management, unprofessionalism, and substandard uniform compliance.

The letter stated his appearance and conduct had "fallen below the standards expected of you" and cautioned that "any further infractions against company policies and procedures will result in additional disciplinary action up to and including termination." He again did not grieve the warning. It became binding.

On December 10, Sullivan made at least two sexually explicit comments to a female flight attendant. On December 11, he showed up late for a flight. Two weeks later, Endeavor fired him. In the termination letter, Endeavor cited his late arrival to

the December 11 flight and inappropriate comments to the flight attendant in violation of the company's anti-harassment policy.[2]

Sullivan grieved his termination to a three-member System Board of Adjustment under the CBA. Arguing his termination was without "just cause," he contended: (1) his comments to the flight attendant were not unlawful or violative of the anti-harassment policy; (2) his conduct did not warrant termination; and (3) Endeavor terminated him in retaliation for complaints he made to the Federal Aviation Administration. The Board rejected the claims, finding "just cause to terminate him."

Sullivan petitioned the district court to vacate the arbitration award for three reasons: (1) it violated his due process rights; (2) the Board exceeded its jurisdiction by not drawing the essence of the award from the CBA; and (3) the Board improperly ignored past practice that requires less serious disciplinary measures. The court denied the petition. He appeals.

II.

This court reviews the district court's "findings of law de novo and its factual findings on a clearly erroneous standard." ***Brotherhood of Maint. of Way Emps. v. Soo Line R.R.***, 266 F.3d 907, 909 (8th Cir. 2001). "Judicial review of a labor-arbitration decision . . . is very limited. Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual

---

[2]As the district court recognized, "there was a dispute between the parties about exactly when Endeavor decided to terminate Sullivan and which termination letter it sent him. The portion of the termination letters addressing Sullivan's remarks to the flight attendant 'differ in potentially significant ways.' However, as discussed below, the [Board] ultimately found this discrepancy immaterial to deciding Sullivan's grievance."

errors or misinterprets the parties' agreement." *Id.*, *quoting **Major League Baseball Players Ass'n v. Garvey***, 532 U.S. 504, 509 (2001).

Under the Railway Labor Act, "a Board's decision may be set aside only for (1) failure to comply with RLA requirements, (2) failure to confine itself to matters within its jurisdiction, or (3) fraud or corruption by a Board member." ***Goff v. Dakota, Minn. & E. R.R. Corp.***, 276 F.3d 992, 996 (8th Cir. 2002), *citing* **45 U.S.C. § 153 First (q)**; ***Union Pac. R.R. Co. v. Sheehan***, 439 U.S. 89, 93 (1978). *See **Ozark Air Lines, Inc. v. Air Line Pilots Ass'n, Int'l***, 744 F.2d 1347, 1350 (8th Cir. 1984) (applying standard to decision of airline system board). "In addition to the statutorily created parameters of review, courts have recognized that . . . arbitration decisions are reviewable for possible due process violations," ***Goff***, 276 F.3d at 997, and violations of "well-defined and dominant public policies." ***Union Pac. R.R. Co. v. United Transp. Union***, 3 F.3d 255, 258 (8th Cir. 1993).

## III.

Sullivan claims a violation of "industrial due process," arguing "[t]he Award allows Endeavor to terminate Sullivan without proper notice as to the quality of conduct for which he could be subject to termination." Although "arbitration decisions are reviewable for possible due process violations," review is limited to the procedural due process afforded by the arbitration itself, not alleged due process in the underlying action challenged. ***Goff***, 276 F.3d at 997 (holding "due process requires that: (1) the Board be presented with a 'full statement of the facts and all supporting data bearing upon the disputes,' . . . and (2) the '[p]arties may be heard either in person, by counsel, or by other representatives . . . and the . . . Board shall give due notice of all hearings to the employee'"), *quoting* **45 U.S.C. § 153 First (i), (j)** (citation omitted). Sullivan does not allege any procedural deficiencies in the arbitration process. His procedural due process claim is without merit.

Alternatively, Sullivan says the award violates public policy because the "[p]rovision of due process to airline employees is a dominant and well-defined part of public policy." Courts may vacate arbitration awards that violate "well-defined and dominant" public policies only if those policies "can be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *United Transp. Union*, 3 F.3d at 258, 260-261, *quoting* *W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 461 U.S. 757, 766 (1983) (internal quotation marks omitted).

Sullivan does not explain how the award violates public policy. Rather, he contends the award affirms an action (his termination) that violates public policy (his due process rights). But this is not a valid reason to set aside an award. *See generally id.* at 261 (holding that reinstatement of the grievant, a railroad employee terminated for drug and alcohol use, violated the "well-defined and dominant public policy against a railroad's employment of individuals whose impaired judgment due to the use of drugs or alcohol could seriously threaten public safety" and placed the railroad at risk of violating the Federal Railroad Administration regulations). Instead, it is an improper attempt to have this court decide the merits of the Board's decision. *See Chauffeurs, Teamsters and Helpers Local Union No. 878 v. Coca-Cola Bottling Co.*, 613 F.2d 716, 717 (8th Cir. 1980) ("It is not within the scope of [this court's] review to pass upon the merits of a grievance."), *quoting* *Kewanee Mach. v. Local U. No. 21, Int'l Bro.*, 593 F.2d 314, 316-317 (8th Cir. 1979). Courts are not "free to overturn any award with which they disagree." *United Transp. Union*, 3 F.3d at 260. As the district court said, "it was the province of the [Board] to decide whether Sullivan's termination was conducted with the necessary procedural due process," and "the [Board] concluded that no violation occurred." *See generally* *Chauffeurs*, 613 F.2d at 720-21 (upholding an arbitration award reinstating an employee because *the arbitrator* concluded that the lack of due process in the investigation meant that the employer did not have "just cause" to terminate). Sullivan's disagreement with the Board's determination that Endeavor did not violate his due process rights is not a reason to reverse the award. *Id.* at 720 ("While our interpretation of 'just cause'

-6-

may differ from that of the arbitrator in this case, such disagreement is irrelevant to our review. We are not to review the merits.").

IV.

Sullivan believes "the Award exceeded its jurisdiction and fails to draw its essence from the contract at issue because it fails to apply the plain policy language on which the termination was based." Stated differently, he thinks Endeavor's anti-harassment policy prohibits only unlawful harassment, making his comments to the flight attendant outside its scope.[3]

A Board award is "enforceable as within the scope of the board's jurisdiction unless the award is 'without foundation in reason or fact.'" *International Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Northwest Air., Inc.*, 858 F.2d 427, 430 (8th Cir. 1988), *quoting* *Brotherhood of Ry., Airline & S.S. Clerks v. Kansas City Terminal Ry. Co.*, 587 F.2d 903, 906 (8th Cir. 1978). "To merit judicial enforcement, an award must have a basis that is at least rationally inferable, if not obviously drawn, from the letter or purpose of the collective bargaining agreement." *Kansas City Terminal Ry. Co.*, 587 F.2d at 906, *quoting* *Brotherhood of R.R. Trainmen v. Central of Ga. Ry. Co.*, 415 F.2d 403, 411-12 (5th Cir. 1969). "The test of the board's jurisdiction is not whether [this court] agree[s] with the board's

---

[3]In December 2006, the anti-harassment policy stated that Endeavor

> does not and will not permit employees to engage in unlawful discriminatory practices, or harassment based on any factor prohibited by law: including sexual harassment. Specifically, unlawful harassment whether committed by supervisory or non-supervisory personnel, is prohibited as unlawful and against stated Company policy. Unlawful harassment involves . . . (c) verbal or physical conduct of a sexual nature; . . . (e) creating an intimidating, offensive or hostile working environment by such conduct.

interpretation of the agreement, but 'whether the remedy fashioned by the Board is rationally explainable as a logical means of furthering the aims of that contract.'" ***International Ass'n of Machinists & Aerospace Workers***, 858 F.2d at 430, *quoting* ***Kansas City Terminal Ry. Co.***, 587 F.2d at 906-07.  "Stated another way, the award must draw its essence from the collective bargaining agreement."  ***Id.***  If it does, "a court is bound to enforce the award and is not entitled to review the merits of the contract dispute." ***W.R. Grace & Co.***, 461 U.S. at 764.

The CBA prohibited Endeavor from disciplining employees without just cause. The Board was tasked with determining whether Endeavor terminated Sullivan's employment for just cause.  This determination required interpreting the anti-harassment policy.  The Board said:

> [Sullivan] emphasizes that the Company's anti-harassment policy prohibited only "unlawful harassment."  The implication is that his conduct did not on its own meet the judicial standard for Title VII cases. Although [Sullivan's] brief did not cite the relevant case law, judicial interpretations of Title VII hold that an employer would be liable for an employee's harassment only if the offensive conduct were "severe or pervasive" enough to interfere with an employee's ability to perform her job.

> The scope of an *employer's* liability under Title VII has nothing to do with its right to discipline an *employee* for offensive conduct that, on its own, would not make the employer liable. Applying [Sullivan's] interpretation of the Anti-Harassment policy as prohibiting only employee conduct that would make the employer legally liable would mean that an employee could not be disciplined for offensive and harassing conduct until it crossed some line and became "severe" or "pervasive."

> That is an unrealistic and cramped reading of the Company's Anti-Harassment policy. We find that the use of the term "unlawful" in that policy refers to offensive and harassing conduct and words that would tend, if tolerated by the employer, [to] create legal problems and

potential liability. The Company has the right to prohibit all such conduct; it has no obligation to let it continue.

Sullivan disagrees with the Board's determination that his conduct violated the anti-harassment policy, and, therefore, Endeavor had just cause to terminate him. However, this court may not review the merits of the Board's determination. *See Gas Aggregation Servs., Inc. v. Howard Avista Energy, LLC.*, 319 F.3d 1060, 1064 (8th Cir. 2003). Because the determination is not contrary to the plain language of the CBA, this argument has no merit. *See Bureau of Engraving, Inc. v. Graphic Commc'ns Int'l Union, Local 1B*, 164 F.3d 427, 429 (8th Cir. 1999) (reversing an arbitration award where the award was "contrary to the plain language of the [CBA]").

V.

Sullivan argues the award further fails to draw its essence from the contract by allowing Endeavor to "ignore past practice [of progressive discipline] and bypass suspension," moving directly to termination.

"The essence of the CBA is derived not only from its express provisions, but also from the industrial common law." *Id.* "The industrial common law includes the past practices of the industry and the shop." *Id.* Where a CBA's contractual provisions are silent, courts must consider the parties' intent, which may include past practices. *Id.*

Sullivan relies on *Bureau of Engraving, Inc. v. Graphic Communications International Union, Local 1B*, 164 F.3d 427, 429 (8th Cir. 1999). But here, the CBA is not silent on the issue of discipline. It states: "Discipline is defined as a written warning, suspension and discharge." As the Board found, nothing in the CBA requires any progression through these disciplinary measures: "The Company might have chosen some other form of discipline like a suspension, but nothing in the

[CBA] required it to do so." Still, the Board found Endeavor progressively disciplined him:

> On October 17, 2006, it issued [Sullivan] two Written Letters of Warning, the first step in the progressive discipline system.
>
> . . . .
>
> About two weeks later, on November 29, 2006, the Company issued [Sullivan] a Final Written Letter of Warning, the next step in its progressive discipline procedure.

The Board concluded that Sullivan had notice that additional infractions may result in termination: "As of December 10, 2006, therefore, he had two Written Letters of Warning and one Final Written Letter of Warning. The last letter specifically warned that further infractions would result in discipline up to termination."

The Board also considered whether termination was an appropriate punishment:

> [Sullivan's] brief suggested that termination was too severe a penalty. It might have been too severe if the events of December 10-11 stood alone. They do not. They were the culmination of a long series of behavioral problems that included repeated informal counselings, two letters of warning, and a final letter of warning. . . . In light of his overall performance record, we cannot find that termination for those events was unjust.

The Board properly applied the CBA.

* * * * * * *

The judgment is affirmed.

_____