# United States Court of Appeals

### For the Eighth Circuit

_____

No. 19-3746

_____

Union Pacific Railroad Company

*Plaintiff - Appellant*

v.

International Association of Sheet Metal, Air, Rail, and Transportation Workers,
(SMART)-Transportation Division

*Defendant - Appellee*

_____

No. 19-3747

_____

International Association of Sheet Metal, Air, Rail, and Transportation Workers,
(SMART)-Transportation Division

*Petitioner - Appellee*

v.

Union Pacific Railroad Company

*Respondent - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

————————

Before BENTON, ERICKSON, and GRASZ, Circuit Judges.

————————

GRASZ, Circuit Judge.

Union Pacific Railroad Company fired train engineer Matthew Lebsack after he defecated on a train-car connector.  An arbitration board reinstated him, citing his lengthy, faithful service record to the company and other mitigating circumstances.  Union Pacific sought to vacate the arbitration award in federal court; Lebsack's union, the International Association of Sheet Metal, Air, Rail, and Transportation Workers ("SMART"), sought to enforce the award.  The district court[1] upheld Lebsack's reinstatement by enforcing the award.  We affirm.

In November 2016, Lebsack—an eighteen-year-veteran employee at Union Pacific—defecated on the connector between two cars, threw soiled toilet paper out of the window, and told his manager he left a "present" for him.  All this despite the restroom being just steps away.  His coworkers then had to clean up the mess using bottled water and paper towels.

When Union Pacific learned what happened, it charged Lebsack with violating company rules.  Under the governing collective bargaining agreement ("CBA"), it opened an investigation and set an evidentiary hearing.  SMART represented him at that hearing.  There, Lebsack admitted to and apologized for his behavior.  He also introduced evidence of mitigating circumstances, including health complications (both psychological and physical) as well as personal matters (that his

_____

[1]The Honorable Brian C. Buescher, United States District Judge for the District of Nebraska.

wife had left him before the incident).  After the hearing, Union Pacific terminated Lebsack.

SMART timely appealed the termination.  Under the Railway Labor Act, 45 U.S.C. § 153, a public law board ("Board") heard the appeal.  After the parties' arguments, the Board first issued an Interim Award reinstating Lebsack and later issued a Final Award upholding that decision.  The Board viewed termination as too harsh given Lebsack's mitigating circumstances and his faithful service record.  The Final Award concluded by emphasizing that "such conduct in the future cannot be tolerated nor excused."

Union Pacific petitioned to vacate that award in federal court and SMART petitioned to enforce it.  In a consolidated decision, the district court granted summary judgment for SMART, holding the Board had not exceeded its authority under the CBA.  Union Pacific now appeals.

We review a district court's grant of summary judgment de novo.  *Northport Health Servs. of Ark., LLC v. Posey*, 930 F.3d 1027, 1030 (8th Cir. 2019).  And in this context, "[j]udicial review of the arbitrator's ultimate decision is very deferential and should not be disturbed 'as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority[.]'"  *N. States Power Co., Minn. v. Int'l Brotherhood of Elec. Workers, Local 160*, 711 F.3d 900, 901 (8th Cir. 2013) (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)).  "Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement."  *Sullivan v. Endeavor Air, Inc.*, 856 F.3d 533, 537 (8th Cir. 2017) (quoting *Brotherhood of Maint. of Way Emps. v. Soo Line R.R.*, 266 F.3d 907, 909 (8th Cir. 2001)).

When reviewing an arbitration board's decision under the RLA, a court may only set aside an award that (1) fails to comply with RLA requirements, (2) does not confine itself to matters within the board's jurisdiction, or (3) involves fraud or

corruption by a board member. *Sullivan*, 856 F.3d at 537 (quoting *Goff v. Dakota, Minn. & E. R.R. Corp.*, 276 F.3d 992, 996 (8th Cir. 2002)). Here, Union Pacific argues that the Board went outside its jurisdiction to issue a remedy.

An arbitrator must interpret and apply the applicable CBA. *See PSC Custom, LP v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, Local No. 11-770*, 763 F.3d 1005, 1009 (8th Cir. 2014) (stating an arbitrator's award should "draw[] its essence from the collective bargaining agreement" (quoting *Misco*, 484 U.S. at 36)). An arbitration board's "award must have a basis that is at least rationally inferable, if not obviously drawn, from the letter or purpose of the collective bargaining agreement." *Sullivan*, 856 F.3d at 539 (quoting *Brotherhood of Ry., Airline & S.S. Clerks v. Kansas City Terminal Ry. Co.*, 587 F.2d 903, 906 (8th Cir. 1978)). This is not a high bar since the question is not whether the arbitrator erred, clearly erred, or even grossly erred in interpreting the contract; it is simply "whether they interpreted the contract." *McClendon v. Union Pac. R.R. Co.*, 640 F.3d 800, 804 (8th Cir. 2011) (quoting *Hill v. Norfolk & W. Ry.*, 814 F.2d 1192, 1194–95 (7th Cir. 1987)).

Union Pacific first argues that the Board's remedy does not draw its essence from the CBA because it unlawfully adds new requirements to the agreement. Everyone agrees that Rule 82 of the CBA governs this dispute. Rule 82 includes two requirements that Union Pacific *must* satisfy to discipline locomotive engineers. First, it must notify the targeted employee. Second, it must conduct a fair and impartial investigation prior to discipline. But unlike the CBAs in the cases Union Pacific cites, Rule 82 does not contain any express restrictions on the arbitrator's ability to review and modify a remedy chosen by Union Pacific. Because the governing CBA contains no such restrictions, we cannot say the Board exceeded its jurisdiction in reinstating Lebsack.

Union Pacific relies on two cases which underscore the point. In *Northern States*, an arbitration board exceeded its jurisdiction when it crafted a remedy overturning the company's decision to terminate for just cause. 711 F.3d at 902–03.

-4-

The operative CBA expressly stated that the arbitration board may only do so where the employer *did not* terminate for just cause. *Id.* Similarly, in *Southwest Airlines*, an arbitration board exceeded its jurisdiction when it concluded that a filing was timely despite an express CBA provision that rendered it untimely. *See Sw. Airlines Co. v. Local 555, Transp. Workers Union of Am.*, 912 F.3d 838, 846 (5th Cir. 2019). Unlike *Northern States* and *Southwest Airlines*, this CBA does not expressly restrict the Board's authority to review and modify Union Pacific's remedy choice, even in a just-cause termination. Without such a limit, we hold that the Board's remedy did not contradict or alter the CBA's terms.[2]

Union Pacific next argues that the remedy creates new prerequisites to the CBA's discipline requirements—medical and psychological evaluations—that conflict with existing timing requirements. This argument lacks merit. Union Pacific relies on an overbroad characterization of the award. The award reads:

> Given that [Lebsack] was a long-term employee with a known history of psychological issues, before any disciplinary action was contemplated, it would have been reasonable for [Union Pacific] to have first sent [Lebsack] for comprehensive psych and medical evaluations to determine his fitness for duty and the credibility of his explanations. If found fit, it would then have been appropriate to handle the incident strictly as a disciplinary matter.

The award only addresses Lebsack's case. It imposes no prospective, all-encompassing duty on Union Pacific for any future cases. Further, Union Pacific's

---

[2]Union Pacific also cites a provision of an agreement it made with SMART establishing the Board, which states that the Board cannot "change existing agreements or make new rules governing rates of pay, rules and/or working conditions." But read in context, the provision does not apply. That provision contains two subsections. Subsection (a) establishes matters over which the board *has* jurisdiction, such as "grievances and disputes," whereas subsection (b) deals with matters over which the board *lacks* jurisdiction. Because the Board unquestionably has jurisdiction here, subsection (b)—the provision Union Pacific cites for support—does not apply at all.

timeliness argument fails because the Board seemingly contemplates postponing the investigation and other disciplinary procedures to allow for the completion of the psychological and medical evaluations. The governing CBA allows such a postponement for "good cause."

We share the district court's bewilderment at the Board's conclusion that a company cannot fire someone for purposefully defecating on company property. Even so, we cannot review the merits. Precedent limits us to asking if the Board is "arguably construing or applying the contract and acting within the scope of [its] authority." *N. States*, 711 F.3d at 902. We conclude that the Board applied the governing CBA and acted within the scope of its authority.[3]

For the foregoing reasons, we affirm.

————————————————————

[3]There are two additional arguments we do not reach. Union Pacific argues that the Board's award requires the company violate the Americans with Disabilities Act and the Family Medical Leave Act. We need not decide the question because Union Pacific did not directly raise it before the district court. As such, we will not consider it for the first time on appeal. *See Johnson Tr. of Operating Eng'rs Loc. #49 Health & Welfare Fund v. Charps Welding & Fabricating, Inc.*, 950 F.3d 510, 525 n.2 (8th Cir. 2020). SMART argues that we should reverse the district court and award Lebsack backpay for the period between the reinstatement decision and the date when he is reinstated. Because SMART did not cross-appeal, this argument— one urging us to alter the district court's judgment to enlarge SMART's rights—is not properly before us. *See Duit Constr. Co. v. Bennett*, 796 F.3d 938, 941 (8th Cir. 2015) ("Under [the Supreme Court's] unwritten but longstanding [cross-appeal] rule, an appellate court may not alter a judgment to benefit a nonappealing party." (alterations in original) (quoting *Greenlaw v. United States*, 554 U.S. 237, 244 (2008))).