Anthony J. ENGLISH, Plaintiff–
Appellant,

v.

BURLINGTON NORTHERN RAILROAD
COMPANY, Defendant–Appellee.

No. 92–36815.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 31, 1994.

Decided March 7, 1994.

Patrick F. Flaherty, Flaherty & Winner, Great Falls, MT, for plaintiff-appellant.

Lawrence M. Stroik, Burlington Northern R. Co., Fort Worth, TX, for defendant-appellee.

Before: GOODWIN, SCHROEDER, and NORRIS, Circuit Judges.

GOODWIN, Circuit Judge:

Plaintiff Anthony J. English, a former employee of defendant Burlington Northern Railroad Company ("Burlington"), appeals a summary judgment for Burlington and the denial of his petition for judicial review of an order of Public Law Board No. 3408 (the "Board") affirming English's discharge from employment for off-duty misconduct. We affirm.

## I.

Burlington discharged English from employment on July 15, 1985, following an off-duty incident in which he assaulted one Stewart, another Burlington employee, at Stewart's home. After English was arraigned on criminal charges stemming from the same incident, Burlington held an investigative hearing. On the advice of his attorney in the criminal matter, English chose not to testify at Burlington's hearing. After this hearing, Burlington discharged English. Subsequently, English pled guilty to misdemeanor assault.

English appealed his discharge to the Board, pursuant to the collective bargaining agreement between his union and Burlington. The union represented English before the Board, and the union representative told him he would not be allowed to testify at the hearing, nor could he provide additional arguments to those presented to Burlington during their investigative hearing. After reviewing the arguments presented by the union and those presented by Burlington, the Board affirmed the discharge. English did not receive a copy of the arguments filed in his behalf until after the hearing was completed.

English filed this action in district court under the Railway Labor Act § 153 First(q). He sought judicial review of the Board's decision. In January, 1990, the district court granted English's petition and denied Burlington's motion for summary judgment. Burlington subsequently filed a motion for a new trial, rehearing, or reconsideration. The district court granted Burlington's motion, and then ruled that English failed to establish a factual predicate for his claim and granted Burlington's motion for summary judgment.

On appeal, English argues that: (1) the Board's proceedings denied him due process; (2) the Board exceeded its jurisdiction by affirming a discharge based on acts which occurred while off-duty; and (3) the proceedings were invalid because the collective bargaining agreement required that disciplinary hearings be held within twenty days.

## II.

The scope of judicial review of adjustment board awards under the RLA is " 'among the narrowest known to the law.' " [1] *International Ass'n of Machinists v. Southern Pac. Transp. Co.*, 626 F.2d 715, 717 (9th Cir.1980) (quoting *Diamond v. Terminal Ry. Al. State Docks*, 421 F.2d 228, 233 (5th Cir. 1970)). The RLA allows courts to review adjustment board decisions on three specific grounds: (1) failure of the board to comply with the RLA; (2) failure of the board to conform, or confine itself to matters within its jurisdiction; and (3) fraud or corruption.

---

1. The RLA as defined applies only to the National Railroad Adjustment Board ("NRAB"), but courts have held that the same standard of review applies equally to Public Law Boards created pursuant to 45 U.S.C. § 153 Second. *J.K. Watts v. Union Pac. R.R.*, 796 F.2d 1240, 1243 (10th Cir.1986); *Brotherhood of Locomotive Eng'rs v. Atchison, T. & S.F. Ry. Co.*, 768 F.2d 914, 921 (7th Cir.1985); *Brotherhood, etc. v. St. Louis SW. Ry.*, 676 F.2d 132, 135 n. 2 (5th Cir.1982) ("the Public Law Boards ... serve as private alternative forums to the [NRAB]").

*Union Pac. R.R. v. Sheehan,* 439 U.S. 89, 93, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978) *(per curiam )* (emphasizing that the " 'findings and order of the [adjustment board] shall be conclusive on the parties' and may be set aside only for the three reasons specified [in the RLA]"). However, we held in *Edelman v. Western Airlines,* 892 F.2d 839 (9th Cir. 1989), that a constitutional challenge is a permissible fourth ground by which a federal court can review an adjustment board decision. *Id.* at 847.

English contends that he was denied due process when asked to waive his constitutional right against self-incrimination during Burlington's investigative hearing. The guarantees of the Fifth and Fourteenth amendments apply only to governmental action, and not to private action. *See Betts v. Brady,* 316 U.S. 455, 462, 62 S.Ct. 1252, 1149, 86 L.Ed. 1595 (1942); *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 349–50, 95 S.Ct. 449, 452–53, 42 L.Ed.2d 477 (1974). Thus, to sustain a due process claim English must show that Burlington's hearing represented governmental action.

Courts have held that other railroads' disciplinary proceedings are private actions, even when the railroad operated under substantive federal regulation. *See Andrews v. Consolidated Rail Corp.,* 831 F.2d 678, 682–83 (7th Cir.1987) (finding that Conrail is not an agency of the federal government for Fifth Amendment purposes even though the government owned 85% of its preferred stock); *Myron v. Consolidated Rail Corp.,* 752 F.2d 50, 54–56 (2d Cir.1985) (holding that Conrail is not an entity of the federal government for purposes of the due process clause). Other courts have refused to review hearings at the railroad investigation stage on due process grounds. *See, e.g., Morin v. Consolidated Rail Corp.,* 810 F.2d 720 (7th Cir.1987) (holding that when Conrail discharged the plaintiff it was not constrained by the Due Process Clause of the Fifth Amendment).

■ English argues that the railroad hearing is governmental action because the RLA imposes a general duty on carriers to settle disputes arising out of the collective bargaining agreement in "such a way as to avoid any interruption in commerce or to the operation of any carrier." 45 U.S.C. § 151a.[2] English provides no case law to support this theory. Given the numerous cases holding that the railroad's investigative hearing is private action, English's argument fails to persuade us that Burlington's investigation was void because it did not honor the employee's refusal on due process grounds to testify at the hearing.

■ In order to prevail on a Fifth Amendment due process claim English must show that the Board itself denied him due process during its proceeding. Cases allowing judicial review of board awards on due process grounds restrict the review to the actions of the board. *See Edelman,* 892 F.2d at 845; *Edwards v. St. Louis–San Francisco R.R.,* 361 F.2d 946, 953–54 (7th Cir.1966). Although in *Edelman* we did not explicitly hold that the actions of the Board are governmental actions, our emphasis on allowing due process review of Board decisions assumed sufficient governmental action to invoke federal constitutional safeguards. We hold that Board proceedings are subject to basic Fifth Amendment requirements that the proceedings are fair.

■ Under the RLA provisions governing Board hearings, due process requires that: (1) the Board be presented with a "full statement of the facts and all supporting data bearing upon the disputes," 45 U.S.C. § 153 subd. 1(i), and (2) the "[p]arties may be heard either in person, by counsel, or by other representatives ... and the ... Board shall give due notice of all hearings to the employee." 45 U.S.C. § 153 subd. 1(j).

"Due notice" is not defined by the RLA, and currently, the Sixth and Seventh Circuits appear to be divided on what notice is due. *Compare Cole v. Erie Lackawanna Ry.,* 541 F.2d 528 (6th Cir.1976), *cert. denied,* 433 U.S. 914, 97 S.Ct. 2987, 53 L.Ed.2d 1100 (1977), *with O'Neill v. Public Law Bd. No. 550,* 581 F.2d 692 (7th Cir.1978). In *Cole,* the court

---

**2.** Section 151a of the Railway Labor Act defines the general purposes of the chapter. The part English refers to reads as follows: "The purposes of the chapter are: (1) To avoid any interruption to commerce or to the operation of any carrier engaged therein." 45 U.S.C. § 151a.

held that even when the union represents the employee at the Board hearing, the employee must receive actual notice of the proceedings, though formal notice need be given only to the union. *Id.* at 534. "Actual notice ... is notice of the hearing for a sufficient period prior thereto to permit the employee to consult with union officials and relay such information as he possesses which might allow the union to more effectively present his claim." *Id.* Then, on facts very similar to the instant case, the court went on to hold that while the employee knew in advance about the Board's hearing, his lack of understanding about the Board proceeding indicated that he did not receive adequate notice. *Id.*

In *O'Neill,* the Seventh Circuit reached a different conclusion, holding that actual notice is not required if the employee is represented by the union. *O'Neill,* 581 F.2d at 696. Rejecting the Sixth Circuit's conclusion, the *O'Neill* court held that "where an individual employee authorizes his union to represent him ... and to receive any notices on his behalf, [the RLA] does not require that actual notice be given to the individual employee." *Id.* at 695.

Both *Cole* and *O'Neill* base their reasoning on two Supreme Court cases addressing the authority of the collective agent to represent an employee before an Adjustment Board: *Elgin, J. & E. Ry. v. Burley,* 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945) (*"Burley I"*) and *Elgin, J. & E. Ry. v. Burley,* 327 U.S. 661, 66 S.Ct. 721, 90 L.Ed. 928 (1946) (*"Burley II"*). In *Burley II* the Court stated by way of dicta that due notice requires at least "knowledge on the aggrieved employee's part of the pendency of the proceedings or knowledge of such facts as would be sufficient to put him on notice of their pendency." *Id.* at 666 n. 9, 66 S.Ct. at 723 n. 9. The Court concludes that "we did not rule ... that an employee can stand by with knowledge or notice of what is going on with reference to his claim ... before the Board ..., allow matters to be thrashed out to a conclusion by one method or the other, and then come in for the first time to assert his individual rights." *Id.* at 666–67, 66 S.Ct. at 723–24.

■ The holding in *Cole* requiring actual notice more closely follows the Supreme Court's reasoning in *Burley II.* Therefore, we hold that when an employee elects to be represented by the union at an Adjustment Board proceeding he must receive actual notice of the proceeding, and such notice must be received in sufficient time to allow the employee to consult with the union representative and to relay any information which may help the union present his claim. However, we decline to follow the Sixth Circuit's holding that sufficiency of notice is dependent on the claimant's subjective understanding of the Board proceedings. If the union representative does not fully inform the employee about the Board hearing or misleads the employee about his rights in those proceedings, the employee has a statutory remedy against the union for breach of its duty of fair representation. *See Marino v. Writers Guild of America, East, Inc.,* 992 F.2d 1480, 1486 (9th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 472, 126 L.Ed.2d 423 (1993) (to establish breach of duty of fair representation, union member must show that union's conduct towards him was arbitrary, discriminatory or in bad faith).

■ In this case, nothing in the record suggests that the Board did not follow the requirements of the RLA. In his affidavit, English stated that he was represented by the union at the Board hearing. Furthermore, he had sufficient notice of the hearing to allow him to meet with a union representative to discuss his case on several occasions, and he knew that the union would submit arguments on his behalf. We express no opinion whether he was allowed to review the union's submission and to add any additional information he wanted the Board to consider, or whether the union denied him fair representation. However, if his union representative denied English fair representation, his claim is against the Union. English has presented no facts to support a claim of violation of due process by the Board.

### III.

■ English asserts a second claim that the Board exceeded its jurisdiction when it affirmed his discharge. The RLA judicial review provision allows review of Board deci-

sions if the Board failed to conform or confine itself to matters within its jurisdiction. *Union Pac. R.R. v. Sheehan,* 439 U.S. 89, 93, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978). A Public Law Board exceeds its jurisdiction if it issues a decision without foundation in reason or fact. *International Ass'n of Machinists v. Southern Pac. Trans. Co.,* 626 F.2d 715, 717 (9th Cir.1980). The basis of the Board's award must be "rationally inferable ... from the letter or purpose of the collective bargaining agreement." *Id.* Furthermore, the interpretation of the collective bargaining agreement is for the Board to decide and not the courts. *Gunther v. San Diego & Ariz. E. Ry. Co.,* 382 U.S. 257, 261–62, 86 S.Ct. 368, 371, 15 L.Ed.2d 308 (1965).

English argues that the collective bargaining agreement does not allow Burlington to discharge him for conduct occurring off-duty on private property. In its decision the Board recognized that the conduct did not occur on duty or on Burlington property. Nevertheless, it ruled that Burlington justifiably pursued disciplinary action against English because the assault was related to his employment. *See* PLB No. 3408, Award No. 50 (Stewart claimed that English attacked him because previously Stewart had reported other employees' misconduct while on the job). It further noted that great care is required before disciplining employees for off-duty conduct, but such discipline may be justified if the employee's conduct adversely affected the railroad. *Id.* Finding that English's conduct was "discourteous, disorderly, quarrelsome and vicious," Burlington discharged him, and the Board affirmed that decision. *Id.* at 2–4.

In upholding the discharge, the Board implicitly interpreted the collective bargaining agreement to allow disciplinary action for conduct such as English's, even though the conduct occurred while off-duty and not on Burlington's property. Given the facts, the Board decided that Burlington acted appropriately in discharging English. This decision is not wholly without foundation in reason or fact, and thus, the Board's decision does not exceed its jurisdiction.

## IV.

Finally, English argues that the Board's decision should be set aside for failure to comply with Rule 35(a) of the collective bargaining agreement. This argument is without merit. Rule 35(a) allows the railroad to postpone its investigation upon reasonable notice and if there is sufficient cause. English received notice that the hearing would be postponed indefinitely on May 28, 1985, and then received notice of the final hearing date on July 1, 1985. The postponed hearing was held after English was arraigned on the criminal charges, but before the criminal case was resolved. Burlington had sufficient cause to delay the hearing at least until English was formally arraigned. Thus, Burlington acted within the bounds of Rule 35(a) in choosing to postpone the hearing.

The judgment is *AFFIRMED.*