# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3801

_____

| | | |
|---|---|---|
| Oak River Insurance Company, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Herman Truitt; Bob Brawner; William | * | Appeal from the United States |
| Novinger, County Commissioners of | * | District Court for the |
| Adair County, Missouri; Adair County, | * | Eastern District of Missouri. |
| Missouri; | * | |
| | * | |
| Defendants, | * | |
| | * | |
| Taxpayers of Adair County, Missouri, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: September 14, 2004
Filed: December 3, 2004

_____

Before RILEY, LAY, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Taxpayers of Adair County ("Taxpayers") appeal from the district court's entry of summary judgment[1] in favor of Oak River Insurance Company. For reversal, Taxpayers argue that the district court erred by enforcing two coverage exclusions contained in the insurance policy covering county officials' errors and omissions. We affirm.

## I. *Background*

Adair County, Missouri purchased an errors and omissions policy from Oak River Insurance Company (Oak River) to cover its employees, including the County Commissioners, for wrongful acts committed during their service.[2] In January 1997, the Commissioners placed a ballot proposal before the voters of the county for authority to impose a law enforcement sales tax for future expansion of the existing Detention Center. The voters approved this proposal. But the Commissioners, rather than expend the tax revenues solely for Detention Center expansion, expressed their intent to build an entirely new jail.

In September 1997, a lawsuit[3] was filed in state court against the Commissioners alleging violation of V.A.M.S. § 67.582. Section 67.582 permits law enforcement sales tax revenue to be used only for capital improvement projects involving existing law enforcement facilities. The state trial court ruled that the county's use of tax revenue to build a new prison facility would not violate state law. Plaintiffs appealed. During the pendency of plaintiffs' appeal, the Commissioners proceeded with construction plans on the new Detention Center using revenue from

---

[1]The Honorable Carol E. Jackson, Chief Judge, United States District Court for the Eastern District of Missouri.

[2]The policy provided coverage for claims made between January 1, 2000 and January 1, 2001, with a retroactive date of January 1, 1995. On January 1, 2001, the policy was renewed through January 1, 2002.

[3]*Armstrong v. Adair County*, Case No. CV197-257DR.

the law enforcement tax to pay excavation costs. In March 1999, the Missouri Court of Appeals reversed,[4] holding that the language of the ballot initiative limited the use of funds to expansion of the existing jail. All work on the new jail ceased.

In December 2000, Taxpayers and Adair County filed suit in Missouri circuit court[5] against the Commissioners for unauthorized use of revenue from the law enforcement tax. The lawsuit alleged that the Commissioners acted negligently, outside of the scope of their authority, and knew or should have known, that expending the revenue from the ballot initiative to construct a new jail was improper. The suit was subsequently designated as a class action on behalf of Taxpayers, and Adair County was dismissed by voluntary non-suit. In fall 2001, the parties signed an Agreement and Stipulated Judgment. This stipulated judgment permitted Taxpayers to seek judgment of $1,180,950.41 against the Commissioners from the proceeds of the Oak River errors and omissions policy.

The Commissioners submitted the stipulated judgment to Oak River for payment, but Oak River denied coverage and filed a petition for declaratory judgment in the United States District Court for the Eastern District of Missouri under 28 U.S.C. § 1332(a). The petition sought a declaration that the errors and omissions policy did not provide coverage for the Commissioners' acts in question. Both parties filed motions for summary judgment. The district court granted Oak River's summary judgment motion based on two policy provisions: exclusion of coverage for claims arising out of any assessment, collection, disbursement, or application of any taxes,

---

[4]*Armstrong v. Adair County*, 990 S.W.2d 64 (Mo. App. 1999).

[5]*The Taxpayers of Adair County, Missouri and the County of Adair County, Missouri v. Herman Truitt, Bob Brawner, and William Novinger*, Case No. CV100-342CC.

and exclusion of coverage for claims arising out of willful violations of the law.[6] This appeal followed.

## II. *Discussion*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is properly granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The district court reviews the evidence in the light most favorable to the nonmoving party. *Ludwig v. Anderson*, 54 F.3d 465, 470 (8th Cir. 1995). The nonmoving party must show the existence of facts on the record which create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).

Motions for summary judgment are reviewed de novo as to conclusions of law and for clear error as to factual findings. *Bhd. of Maint. of Way Employees v. Soo Line R.R.*, 266 F.3d 907, 909 (8th Cir. 2001); *Goff v. Dakota, Minn. & Eastern R.R. Corp.*, 276 F.3d 992, 995 (8th Cir. 2002). The interpretation of the terms of an insurance contract is a matter of state law, which is reviewed de novo. *Gen. Cas. Ins. Cos. v. Holst Radiator Co.*, 88 F.3d 670, 671 (8th Cir. 1996); *Carolina Cas. Ins. Co. v. Burbach*, 354 F.3d 929, 931 (8th Cir. 2004).

---

[6]The policy contained exclusions: (1) for any damage arising out of willful violation of any federal, state, or local statute, ordinance, rule or regulations committed by or with the knowledge of or consent of any insured; (2) for any damage arising out of or based upon any act or any liability of any insured in connection with (a) any tax assessment, tax penalties, or tax adjustments, (b) collection, refund, disbursement, or application of any taxes, (c) tax revenue shortfalls, or (d) any debt financing, including but not limited to bonds, notes, debentures, and guarantees of debt or the formulation of tax rates, the collection of taxes and/or the disbursement of tax refunds.

A. *Exclusion for Claims Arising from Assessment, Collection,*
*Disbursement, or Application of Taxes*

Taxpayers contend that the exclusions in the errors and omissions policy create an ambiguity by negating all coverage for the Commissioners, since every act[7] of a Commissioner affects assessment, collection, disbursement, or application of taxes. Taxpayers base this argument on Section I(A) of the policy that covers losses due to wrongful acts and Section I(B)(13) of the policy that excludes coverage for acts arising out of a tax assessment, tax penalty, collection, refund, disbursement, application of taxes, revenue shortfall, and debt financing. Taxpayers maintain that coverage applies when a policy both includes and excludes an act of the insured, *Braxton v. United States Fire Ins. Co.*, 651 S.W.2d 616, 619 (Mo. Ct. App. 1983)(holding that a court must apply the construction most favorable to the insured when the policy is reasonably susceptible to two interpretations), and that insurance contracts must be interpreted to grant, rather than defeat coverage. *Centermark Props. v. Home Indemnity Co.*, 897 S.W.2d 98, 100 (Mo. Ct. App. 1995).

The district court correctly determined the errors and omissions policy to be unambiguous. The Missouri test for ambiguity is clear. The policy must be read as a whole to determine the parties' intent. *Kyte v. Am. Family Mut. Ins. Co.*, 92 S.W.3d 295, 298–99 (Mo. Ct. App. 2002); *Stotts v. Progressive Classic Ins.*, 118 S.W.3d 655, 662 (Mo. Ct. App. 2003). The words of a policy are given their ordinary meaning unless it is obvious that a technical meaning was intended. *Krombach v. Mayflower Ins. Co. Ltd.*, 785 S.W.2d 728, 731 (Mo. Ct. App. 1990); *Herpel v. Farmers Ins. Co. Inc.*, 795 S.W.2d 508, 510 (Mo. Ct. App. 1990). Courts cannot create an ambiguity to enforce a particular construction. *Rodriguez v. Gen. Accident Ins. Co.*, 808 S.W.2d 379, 382 (Mo. 1991) (en banc); *Am. Family Mut. Ins. Co. v. Van Gerpen*, 151 F.3d 886, 888 (8th Cir. 1998).

---

[7]In their reply brief, Taxpayers indicate that not every Commissioner's act, but acts relating to "primary and everyday functions," are negated.

Insurance policy language is ambiguous when it is reasonably open to different constructions. *Lincoln County Ambulance v. Pac. Employers Ins.*, 15 S.W.3d 739, 743 (Mo. Ct. App. 1998); *Stotts*, 118 S.W.3d at 662. An ambiguity arises if there is duplicity, indistinctness, or uncertainty in the meaning of the contractual terms. *Lumbermens Mut. Ins. Co. v. Timberland Pallet & Lumber Co.*, 195 F.3d 368, 377 (8th Cir. 1999); *Cincinnati Ins. Co. v. Television Eng'g Corp.*, 265 F. Supp. 2d 1078, 1081 (E.D. Mo. 2003). An insurance policy that promises something at one point and then takes it away at another is ambiguous. *Behr v. Blue Cross Hosp. Serv. Inc.*, 715 S.W.2d 251, 256 (Mo. 1986) (en banc); *Maxon v. Farmers Ins. Co. Inc.*, 791 S.W.2d 437, 438 (Mo. Ct. App. 1990).

Ambiguous language is construed against the insurer. *Peters v. Employers Mut. Cas. Co.*, 853 S.W.2d 300, 302 (Mo. 1993) (en banc); *State Farm Mut. Ins. Co v. Shahan*, 141 F.3d 819 (8th Cir. 1998). Likewise, so is limiting language. *Brugioni v. Maryland Cas. Co.*, 382 S.W.2d 707, 711 (Mo. 1964); *Chase Resorts Inc. v. Safety Mut. Cas. Corp.*, 869 S.W.2d 145, 150 (Mo. Ct. App. 1993). If an ambiguity exists, the policy language will be interpreted as understood by the lay person who purchased it. *Hawkeye-Sec. Ins. Co. v. Davis*, 6 S.W.3d 419, 424 (Mo. Ct. App 1999); *Stotts*, 118 S.W.3d at 662. Courts should not adopt an interpretation neutralizing a policy provision if another interpretation gives it effect. *Sommer v. New Amsterdam Cas. Co.*, 171 F. Supp. 84 (E.D. Mo. 1959).

When a policy defines a term, that definition controls "unless the context clearly requires otherwise." *Enterprise Tools, Inc. v. Export-Import Bank*, 799 F.2d 437, 439 (8th Cir. 1986); *Shaffner v. Farmers Mut. Fire Ins. Co. of St. Clair County*, 859 S.W.2d 902, 907 (Mo. Ct. App. 1993). Overly technical, unrealistic, unreasonable or absurd interpretations are to be avoided. *Basore v. Allstate Ins. Co.*, 374 S.W.2d 626, 630 (Mo. Ct. App. 1963). The rules of construction are inapplicable to an unambiguous policy. *Kyte*, 92 S.W.3d at 298; *Stotts*, 118 S.W.3d at 662.

Missouri law requires an unambiguous policy be given its plain meaning. *Killian v. Tharp*, 919 S.W.2d 19, 21 (Mo. Ct. App. 1996); *St. Paul Fire & Marine Ins. Co. v. Lippincott*, 287 F.3d 703, 705 (8th Cir. 2002).

The policy in the present case is clear and unambiguous as to coverage and exclusions. While the policy covers wrongful acts of county officials, a sub-category of those acts is expressly excluded (acts arising out of a tax assessment, tax penalty, collection, refund, disbursement, application of taxes, revenue shortfall, and debt financing). Despite this clarity, Taxpayers assert that the contract is ambiguous because "one cannot purport to insure a party in one section of a policy and then exclude coverage for all possible claims against that party in another section." Taxpayers erroneously rely on *Braxton*, 651 S.W.2d at 619.[8] Taxpayers' argument fails because the Oak River exclusion does not negate all, or even most, policy coverage for employee or commissioner malfeasance. Many such claims are readily conceivable. Missouri's code provides ample proof that the exclusion for tax, but not

---

[8]*Braxton* was decided on other grounds. In *Braxton*, Respondent sued the owner of a gas station where he was shot and obtained a judgment for $100,000. The owner's liability insurance carrier denied coverage. Respondent sued the insurer who argued "the plain language of the firearm exclusion [of the insurance policy] disclaimed coverage for all liability resulting from the ownership or use of firearms regardless of the theory on which such liability was based." *Id.* at 618. The trial court ruled for Respondent and the insurer appealed. The appellate court affirmed citing *Cochran v. Standard Accident Ins. Co. of Detroit*, 271 S.W. 1011 (1925), as factually similar. *Cochran* involved an accident policy which excluded coverage for injuries sustained from firearms. Insured was shot and killed by an insane man. The court held coverage applied, reading the policy to only exclude coverage while the insured was handling firearms. *Id.* at 1013. "Because the language in the policy at issue was reasonably susceptible to two interpretations, the court was required to apply the construction most favorable to the insured and this is especially true when the clause in question attempts to limit or exclude coverage under the policy." *Braxton*, 651 S.W.2d at 619 (citations omitted). *See Brugioni*, 382 S.W.2d at 711. But this case does not involve a clause reasonably susceptible to two interpretations.

all activities, does not neutralize the entire errors and omissions policy.[9]

Taxpayers correctly cite the legal principle found in *Behr*, 715 S.W.2d at 256. The Supreme Court of Missouri stated "if a contract promises something at one point and takes it away at another there is ambiguity." *Id.* However, what is given and what is taken away must be the same thing. The *Behr* court stated, "[h]ere certain provisions, relied on by the Behrs, provide pregnancy benefits to members in good standing once the waiting period has expired; other provisions cited by appellants attempt to negate this coverage." *Id.* Nowhere in the Adair County errors and omissions policy is coverage for "wrongful acts" negated. Consequently, *Behr* is inapposite.

---

[9]The following is a list of non-treasury related county commissioner duties for third class counties such as Adair County: filing reports on all funds received from the United States and representing the county on all regional councils that encompass that county (V.A.M.S. § 49.098); issuing process and examining parties and witnesses (V.A.M.S. § 49.210); permissible certifying and transferring proceedings to circuit court (V.A.M.S. § 49.220); granting easements to watershed districts (V.A.M.S. § 49.264); authorizing the closing of county offices (V.A.M.S. § 49.265); controlling and managing county property both real and personal (V.A.M.S. § 49.270); providing law enforcement (V.A.M.S. § 49.276); permissible appointing of an ex officio commissioner to sell county lands (V.A.M.S. § 49.280); institution of condemnation proceedings (V.A.M.S. § 49.300); appointing a person to superintend the erection of county buildings (V.A.M.S. § 49.330); and designation of the site for county buildings (V.A.M.S. § 49.370). Other commissioner actions involve the treasury but not the excluded tax functions. *See*, *e.g.*, V.A.M.S. § 49.260 (ascertaining by examination and counting the balances in the hands of county officers); V.A.M.S. § 50.160 (auditing adjusting, and settling all accounts to which the county is a party, enforcing collection of money due the county and ordering the prosecuting attorney to bring suit on the bond of any delinquent).

B. *Exclusion for Claims Arising from Willful Violations of the Law*

Taxpayers also argue that because the insurance policy covers malfeasance which is a willful act under Missouri law, but excludes willful actions, the policy is ambiguous. The district court disagreed, stating, "[t]he problem with the Taxpayers' position is that the cited exclusion applies to the narrower class of 'willful violations' of law, not to all willful acts generally." We agree with the district court's assessment of Taxpayers' argument. Taxpayers have not shown an ambiguity in the Oak River policy.

For the foregoing reasons, we affirm the district court's grant of summary judgment.

_____