**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| ROBERT BRADFORD, JR.,<br>*Petitioner-Appellant*,<br><br>v.<br><br>UNION PACIFIC RAILROAD<br>COMPANY, a Delaware corporation,<br>*Respondent-Appellee*. | No. 12-16469<br><br>D.C. No.<br>4:10-cv-00751-<br>JGZ<br><br>OPINION |

Appeal from the United States District Court
for the District of Arizona
Jennifer G. Zipps, District Judge, Presiding

Submitted February 14, 2014[*]
San Francisco, California

Filed September 16, 2014

Before: Richard C. Tallman and Johnnie B. Rawlinson,
Circuit Judges, and Marvin J. Garbis, Senior District
Judge.[**]

Opinion by Judge Garbis

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[**] The Honorable Marvin J. Garbis, Senior District Judge for the U.S. District Court for the District of Maryland, sitting by designation.

## SUMMARY[***]

### Labor Law

The panel affirmed the district court's summary judgment rejecting petitioner's challenge to a Public Law Board arbitration decision affirming the termination of his employment with a railroad.

The panel held that there was no violation of petitioner's due process rights in a preliminary on-property investigative hearing because the railroad company was a private actor with respect to the hearing. The panel held that the Public Law Board did not violate petitioner's due process rights because the procedures it used did not present a meaningful risk of a erroneous deprivation of petitioner's interest in maintaining his employment. The Board also did not err regarding procedural deficiencies in the on-property hearing because it was acting within its jurisdiction, and its decision not to remedy alleged procedural violations was beyond the scope of judicial review. The panel concluded that the Board considered a complete record and did not violate the Railway Labor Act.

### COUNSEL

Jeffrey H. Jacobson, Jacobson Law Firm, Tuscon, Arizona, for Petitioner-Appellant.

---

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Clifford A. Godiner, Thompson Coburn LLP, St. Louis, Missouri, for Respondents-Appellees.

**OPINION**

GARBIS, District Judge:

Petitioner-Appellant Robert Bradford, Jr. ("Bradford") appeals from the district court's grant of summary judgment on his challenge to a Public Law Board decision affirming the termination of his employment with a railroad. We have jurisdiction pursuant to 28 U.S.C. § 1291 and, for the reasons stated herein, we affirm.

## I.  BACKGROUND

Bradford commenced his employment with Union Pacific Railroad Company ("Union Pacific") in 1979. On December 7, 2007, following procedures discussed herein, Union Pacific fired Bradford due to drug use.

### A.  The Drug Tests

In July 2006, Union Pacific, where Bradford was employed as a conductor, fired him for failing a mandatory drug test. But in October 2006, after Bradford admitted that he had violated Union Pacific's drug and alcohol policy (the "Policy") and agreed to seek treatment, he was allowed to return to service. Bradford's reinstatement was subject to a Policy provision requiring his dismissal should he violate the Policy again within ten years.

In the early morning of September 4, 2007, Bradford was scheduled to depart on a train from Tucson, Arizona, to El Paso, Texas. Prior to departure, the Federal Railroad Administration subjected Bradford to a random drug and alcohol test. He provided a urine specimen (the "First Specimen") that was "split" so that a second sample (the "Split Sample") was saved for a possible re-test.

Hours later, after arriving in El Paso, Bradford slipped while on the job and injured his tailbone. As a result of the fall, Bradford was subjected to a "for cause" drug and alcohol test during which he gave a urine specimen (the "Second Specimen").

The lab results on the First Specimen, which were available a week after the test date, were positive for amphetamines. But the Second Specimen, collected the same day as the First Specimen, was negative for drugs and alcohol.

Because of the positive drug test, on or about September 13, 2007, Union Pacific initiated disciplinary procedures against Bradford pursuant to the Collective Bargaining Agreement (the "CBA") between Union Pacific and the United Transportation Union ("UTU"), which represents Bradford and other Union Pacific conductors.

Two weeks after Union Pacific initiated the disciplinary action, Bradford had a sample of his hair tested for amphetamines at an independent lab. The hair tested negative for drugs, including amphetamines, suggesting that Bradford had not consumed amphetamines during the preceding 90 to 120 days.

### B.  The On-Property Investigative Hearing

The CBA provides that disciplinary procedures begin with a hearing during which a Union Pacific hearing officer will develop a record.  After the hearing, a superintendent issues a decision.

Hearing Officer Brian Crehan ("Crehan") was assigned to Bradford's case.  Crehan initially delayed the hearing because UTU claimed that it did not have access to the materials Union Pacific would use in its case.  When the hearing convened, Bradford disputed Union Pacific's reports that he had not asked for a test of the split sample on the First Specimen.  In any event, the Split Sample was tested and the results confirmed the presence of amphetamines in the First Specimen.

Along with the positive Split Sample test result, Crehan admitted evidence of the negative test result from the test of the Second Specimen.  Crehan refused to admit evidence of the negative hair sample test independently obtained by Bradford.  He also did not admit the testimony of Bradford's expert witness, forensic toxicologist Mark Stoltman, and did not permit Bradford to utilize Stoltman's testimony in closing statements.  Nevertheless, UTU submitted the excluded evidence to the superintendent who made the disciplinary decision.

In the course of the on-property investigative hearing, Crehan engaged in an *ex parte* meeting with Union Pacific officials and directly questioned Bradford.

On December 7, 2007, the superintendent sustained the charge against Bradford and dismissed him from Union

Pacific.  UTU appealed the superintendent's decision on Bradford's behalf, but Union Pacific rejected the appeal.  The matter then went before the Public Law Board ("Board") for binding arbitration.

## C.  The Public Law Board Proceeding

In 2003, Union Pacific and UTU agreed to form a Public Law Board.  The Board consists of three representatives: one from UTU, one from Union Pacific, and one neutral party. Pursuant to the 2003 agreement, the Board can only accept evidence that the parties presented at the on-property hearing. It cannot gather new evidence, although it can request additional data from the parties.

The Board considered: (1) Bradford's procedural objections to the on-property investigative hearing; (2) the results of the three drug tests administered by Union Pacific (the First Specimen, the Split Sample, and the Second Specimen); (3) the evidence related to the hair-sample drug test obtained by Bradford; and (4) a letter from the Medical Review Officer[1] explaining that Bradford could have tested positive for amphetamines in the morning but not in the afternoon.

The Board found that Union Pacific had shown that Bradford violated the conditions of his return to employment and Union Pacific's Policy.

The Board rejected Bradford's procedural objections to the on-property investigative hearing and concluded that

---

[1] The Board included the text of the Medical Review Officer's letter in its award.

Union Pacific was not required to provide Bradford with litigation packets from the labs that tested his sample. The Board found insignificant the fact that Union Pacific requested that the Split Sample be tested when the Medical Review Officer denied having received Bradford's request. The Board appeared to agree with the Hearing Officer that Bradford's subsequent hair sample test and accompanying expert witness were not relevant to the issue of whether he tested positive for drug use on September 4, 2007.

## D. The District Court Proceedings

Bradford appealed the Board's decision to the United States District Court for the District of Arizona. The parties filed cross-motions for summary judgment. The district court held against Bradford and entered judgment in favor of Union Pacific on all claims. *Bradford v. Union Pac. R.R. Co.*, 872 F. Supp. 2d 912, 914, 924 (D. Ariz. 2012).

The district court rejected Bradford's contention that the Railway Labor Act ("RLA") required the Board to gather additional evidence and found that the Board had not violated the RLA. *Id.* at 918. Specifically, it concluded that the Board had acted within the scope of its authority and jurisdiction as outlined by the CBA. *Id.* at 919–20. The district court also determined that the Board did not violate Bradford's due process rights by deciding his case without the litigation packet. *Id.* at 922–23.

Finally, the district court denied Bradford's claims centered on public policy and Union Pacific's purported

violations of federal regulations and other procedures[2] on the grounds that there was no established public policy interest at stake and that any violations by Union Pacific would not have changed the Board's decision. *See id.* at 923–24. According to the district court, the Board had considered Union Pacific's actions and determined that they did not rise to the level of a constitutional violation. *Id.* at 923. Further, the district court concluded that even if Union Pacific had violated federal regulations, any remedy was available through the Federal Railroad Administration, not through the Board. *Id.* at 923–24.

Bradford filed a timely appeal of the district court's decision to this court.

## II.      STANDARD OF REVIEW

We review *de novo* a district court's grant of summary judgment enforcing an arbitration award. *Sheet Metal Workers' Int'l Ass'n Local Union No. 359 v. Madison Indus., Inc. of Ariz.*, 84 F.3d 1186, 1190 (9th Cir. 1996).

## III.     DISCUSSION

### A.  Scope of Review

As stated in Union Pac. R.R. Co. v. Sheehan:

---

[2] Bradford argued that that Union Pacific violated federal regulations by failing to produce the litigation packet and that his case should have been decided using Union Pacific's Drug and Alcohol Prevention Program Discipline Panel. *Bradford v. Union Pac. R.R. Co.*, 872 F. Supp. 2d 912, 923 (D. Ariz. 2012).

> Judicial review of Adjustment Board orders is limited to three specific grounds: (1) failure of the Adjustment Board to comply with the requirements of the Railway Labor Act; (2) failure of the Adjustment Board to conform, or confine, itself to matters within the scope of its jurisdiction; and (3) fraud or corruption. Only upon one or more of these bases may a court set aside an order of the Adjustment Board.

439 U.S. 89, 93 (1978). However, in *Edelman v. W. Airlines, Inc.*, we held that a district court would have jurisdiction to determine whether an adjustment board had violated a party's constitutional rights. 892 F.2d 839, 847 (9th Cir. 1989).

## B.  The On-Property Investigative Hearing

It is well-established that "[t]he guarantees of the Fifth and Fourteenth amendments apply only to governmental action, and not to private action." *English v. Burlington N. R.R. Co.*, 18 F.3d 741, 744 (9th Cir. 1994). In *English*, the railroad discharged an employee after the employee assaulted another employee in an off-duty incident. *Id.* at 743. The employee claimed that the carrier violated his Fifth and Fourteenth Amendment rights by asking him to waive his right against self-incrimination during the on-property hearing. *Id.* at 744. We stated that "to sustain a due process claim [the employee] must show that [the carrier's] hearing represented governmental action," and determined that the investigation, including the on-property hearing, was a private action. *Id.*

Union Pacific in the instant case, like the railroad company in *English*, was a private actor with respect to the on-property hearing.  Hence, there was no violation of Bradford's due process rights.

## C.  The Public Law Board Proceeding

Bradford next contends that the Board violated his due process rights by virtue of its own proceedings and its alleged failure to remedy the procedural violations that occurred during the on-property hearing.

### 1.  The Board did not violate Bradford's due process rights

The actions of the Board can constitute government action.  Hence, the Board must afford a party, such as Bradford, due process.  *See id.*  Thus, we must consider what process Bradford was owed.

A litigant receives adequate due process where, in the context of the circumstances at issue, sufficient procedures provide the individual an opportunity to be heard before he is deprived of life, liberty, or property.  *Edelman*, 892 F.2d at 847.  The Supreme Court of the United States has recognized three factors that a court should consider in determining whether there was adequate due process:

> 1.  [T]he private interest that will be affected by the official action;
>
> 2.  [T]he risk of an erroneous deprivation of such interest through the procedures used, and

the probable value, if any, of additional or substitute procedural safeguards; and

3.   [T]he Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976).

In regard to the Board's procedures—the "official" action in this case—Bradford certainly has a strong interest in maintaining his employment and the Government has a strong interest in the expeditious resolution of minor disputes that could disrupt railway transportation.[3]   However, as to the second *Mathews* factor, the procedures that the Board used did not present a meaningful risk of an erroneous deprivation of Bradford's interest.

Under the RLA, if an employee and a carrier cannot reach an agreement, "the dispute[] may be referred by petition . . . to the . . . Board with a full statement of the facts and all supporting data bearing upon the dispute[]."   45 U.S.C. § 153(i).   Bradford asserts that the Board considered an incomplete record because the Hearing Officer excluded evidence relevant to the dispute, including his negative hair sample test and the testimony of an expert witness.   However,

---

[3] *See Edelman v. W. Airlines, Inc.*, 892 F.2d 839, 848 (9th Cir. 1989) (noting that "[o]f course, [the employee] asserts a significant interest in continued employment" and that "the government has an important interest in allowing minor disputes under the [Railway Labor Act] to be settled in an efficient and informal manner").

the Board received all the evidence submitted in the petition for review, including the evidence that the Hearing Officer had admitted and excluded.

Bradford claims that the Board's record was incomplete because Union Pacific never produced the litigation packet *(i.e.*, his medical records from the labs that tested his urine specimens), as required by statute. A Medical Review Officer must produce the litigation packet if an employee requests it. 49 C.F.R. § 40.329(a) ("As an MRO or service agent you must provide, within 10 business days of receiving a written request from an employee, copies of any records pertaining to the employee's use of alcohol and/or drugs, including records of the employee's . . . mandated drug and/or alcohol tests."). The parties dispute whether Bradford actually filed the request for the litigation packet. However, the Board had the transcripts and exhibits from the hearing in which the parties disputed whether the request was sent, along with the positive results of the split sample test, the negative results of the Second Specimen test, and the subsequent negative hair sample test Bradford provided. The Board ultimately determined, quite reasonably, that it had enough information to render a decision without the litigation packet.

Even if the Board mistakenly absolved Union Pacific of its responsibility regarding provision of the litigation packet, any error was immaterial.[4] The Board met the statutory

---

[4] Courts must respect even a legally erroneous Board award. *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987) (explaining that an arbitrator's award must be upheld even if the arbitrator misreads the contract); *cf. id.* at 39 ("[I]mprovident, even silly, factfinding . . . is hardly a sufficient basis for disregarding what the

requirement by considering all of the evidence provided.  *See* 29 C.F.R. § 301.5 (d) ("[A]ll data submitted in support of employees' position must affirmatively show the same to have been presented to the carrier and made a part of the particular question in dispute."); *id.* § 301.5 (e) (same language addressed to the carrier).

In *Goff v. Dakota, Minnesota & Eastern Railroad Corp.*, the Eighth Circuit considered a case in which a transcript submitted to the Board omitted a recess that occurred during the hearing and after which a witness changed his testimony. 276 F.3d 992, 997–98 (8th Cir. 2002).  Additionally, the carrier had refused to release the identity of the individual who ordered the drug test and under what authority.  *Id.* at 998.  Although the Eighth Circuit noted that the omission of the recess was "odd,"  it concluded the carrier's actions did not rise to the level of violating due process, in part because the employee had "ample opportunity to present his arguments."  *Id.*  Like the plaintiff in *Goff*, Bradford had ample opportunity to present his arguments, even though he was not permitted to introduce all the evidence he desired during the on-property investigative hearing.

The Board considered the evidence it was required to consider, so it did not deny Bradford due process.

### 2.  The Board did not err regarding on-property investigative hearing deficiencies

Bradford asserts that there were various procedural deficiencies in the on-property investigative hearing.  His

---

[arbitrator] appointed by the parties determined to be the historical facts.").

contentions include, in addition to the litigation packet contention discussed *supra*, (1) the Hearing Officer's allegedly illegal request that the lab test Bradford's Split Sample; (2) an *ex parte* meeting between the Hearing Officer and Union Pacific officials; and (3) alleged problems with the collection of the Split Sample.

The Memorandum of Agreement attached to the CBA states that "[e]mployees will not be disciplined without just and sufficient cause as determined by a fair and impartial investigation except as provided [in the Agreement]." In its award, the Board addressed Bradford's procedural complaints, although it did not resolve them in his favor. That the Board considered these issues indicates that it was determining whether the hearing was fair and whether there was sufficient cause to discipline Bradford. This is within the confines of the CBA, as required by Supreme Court precedent. *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960) (requiring that an arbitrator's award "draw[] its essence from the collective bargaining agreement"). Therefore, the Board was acting within its jurisdiction when it declined to remedy the alleged procedural issues with the on-property hearing.

Further, the Board's decision not to remedy Union Pacific's alleged violations during the on-property investigative hearing is beyond the scope of judicial review. Courts may not second-guess an arbitrator's determinations simply because another decision is plausible. *See United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987) ("To resolve disputes about the application of a collective-bargaining agreement, an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them."). Even serious errors of fact or law

are not sufficient for a court to overturn an arbitrator's award, provided the arbitrator is acting within its jurisdiction and not "stray[ing] from interpretation and application of the agreement." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001).

### 3. The Board did not violate the RLA

Bradford does not expressly claim that the Board violated the RLA. However, his claim that the Board violated his due process rights by issuing its decision without a complete record may be interpreted to include a contention that there was a violation of the RLA, specifically 45 U.S.C. § 153(i).[5] Even if Bradford had made such a contention, his position would lack merit. The Board considered a complete record and did not violate the RLA.

**AFFIRMED.**

---

[5] *See* 45 U.S.C. § 153(i) ("The disputes between an employee . . . and a carrier . . . shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred . . . to the . . . Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes.").